## ROPER v. UNITED STATES.*
### No. 498.

Circuit Court of Appeals, Tenth Circuit.

Dec. 21, 1931.

Edwin H. Park, of Denver, Colo., for appellant.

Ivor O. Wingren, Asst. U. S. Atty., of Denver, Colo.

Before PHILLIPS and McDERMOTT, Circuit Judges, and POLLOCK, District Judge.

### POLLOCK, District Judge.

The appellant was convicted of using the mails in furtherance of a scheme to defraud. The scheme alleged was that the defendant would represent that he was a wholesale merchant engaged in the sale of (a) meal and other farm products, and (b) that he was in the market to purchase and sell in carload quantities, and (c) that by means of letters and telegrams he would communicate with the victims and solicit them to either sell their farm products to him, or buy farm products from him. That in connection with this scheme he made certain false pretenses concerning (a) his financial standing, (b) his ability to pay for the goods sold, (c) to pay for goods bought, and (d) to deliver the goods sold. That particularly he promised that he would promptly pay for commodities purchased upon receipt of bills of lading, whereas in truth and fact he would not pay promptly for them in the regular course of business, and that at the time he made such representations he did not intend to pay for them. It is further particularly alleged that he represented that he would promptly deliver commodities which he had for sale upon receipt of a cash advance, whereas he did not have any commodities for sale and did not intend to deliver such commodities when he made the representations.

A motion to quash the indictment was denied. The evidence disclosed that Roper had a one-room office, and no stenographer; that Roper conceded that he owed money to the persons charged to have been defrauded. He declined to tell where he had a produce warehouse. The evidence further disclosed that he did business with a letterhead which had on it: "Codes; Robinson, Armsby, L. W. Roper, Wholesale Merchants, Beans, Peas, Hay, Field Seeds, Poultry Supplies, Denver." The evidence further disclosed that he wrote to a railroad agent at Murdo, S. D., asking him to put him in touch with some shippers who would sell him some hay. It also discloses that he initiated a deal with the Elliott Brokerage Company, Bluefield, W. Va., by offering to sell them some beans. Mr. Elliott had known Mr. Roper for two years prior to this correspondence.

The evidence also discloses that Roper wrote to a Minneapolis concern asking for the names of some brokers and commission merchants in Minneapolis and St. Paul who specialized in the handling of poultry supplies. This was not one of the things charged in the indictment, but it does show a solicitation of customers, and is also competent, in our judgment, as proof as to other similar offenses. The record also discloses that Roper wrote the Farmers' Elevator Company of Douglas, Wyo., soliciting business, which was turned over to a Farm Bureau which dealt with him. It also seems that he initiated transactions with Doern-Scarritt-Hannah

*Rehearing denied March 21, 1932.

Company at Chicago, by sending them samples of seed and offering to deal with them.

There is considerable similarity in all of the correspondence. If he was buying stuff from farmers, he expressly told them not to draw drafts, sometimes saying that he might want to divert the shipments. He would get the produce and then fail to pay for it and would put them off by saying that he would send the remittance in a few days. On the other hand, where he was selling goods, he would not ship any merchandise without an advance payment. When he got the advance payment he failed to ship the merchandise. In none of the transactions explored did the defendant either pay for farm products which he bought, nor did he ship goods for which he had received an advance payment.

The defendant relies upon the following errors:

■ 1. That the indictment was insufficient in that it did not specifically deny the truth of the representations. We do not agree. It is true that the denial is introduced with the phrase, "Whereas in truth and in fact," but in each instance there was a positive statement that he did not intend to deliver the commodity he agreed to sell and deliver, and that he did not intend to pay the victims for the commodities which he purchased. The allegation in the indictment that he made representations as to his financial standing was not expressly negatived. It is our judgment, however, that the indictment alleges with sufficient certainty the nature of the scheme to enable the defendant to defend and protect himself against further prosecutions. It advises him that he used the mails to defraud eight named persons by procuring goods or money from them without the intent to pay for the goods bought or to ship the goods sold. The principal reliance of the defendant on this aspect is the case of Dalton v. United States (C. C. A.) 127 F. 544, the authority of which has been greatly impaired by the same circuit in Grossman v. United States, 282 F. 790, and Ader v. United States, 284 F. 13. The Third Circuit is squarely opposed in Culp v. United States, 82 F. 990.

■ We have treated the defendant's "Motion to Quash" as a demurrer, because it attacks the sufficiency of the facts set out in the indictment, and is not confined to an attack upon the validity of the indictment. If, however, it should be treated as a motion to quash in the proper sense, the overruling thereof is ordinarily not assignable as error. The indictment is sufficient, in any event, when attacked only by a motion to quash. In the head note to the opinion in United States v. Rosenberg, 74 U. S. (7 Wall.) 580, 19 L. Ed. 263, it is said: "This court cannot take cognizance, under the Judiciary Act of 1802, of a division of opinion between the judges of the Circuit Court, upon a motion to quash an indictment."

In the opinion of the court, delivered by Mr. Chief Justice Chase, it is said: "The motion to quash, upon which the question now before us arose, was clearly determinable as a matter of discretion. It was preliminary in its character, and the denial of the motion could not finally decide any right of the defendant. The rule laid down by the elementary writer is, that 'a motion to quash is addressed to the sound discretion of the court, and if refused, is not a proper subject of exception.' "

In Durland v. United States, 161 U. S. 306, 16 S. Ct. 508, 511, 40 L. Ed. 709, the great lawyer, Mr. Justice Brewer, in delivering the opinion for the court, said: "These objections were raised by a motion to quash the indictment, but such a motion is ordinarily addressed to the discretion of the court, and a refusal to quash is not, generally, assignable for error. Logan v. United States, 144 U. S. 263–282, 12 S. Ct. 617 [36 L. Ed. 429]."

In Endleman v. United States (C. C. A.) 86 F. 456, 458, it is said: "The objections raised by the motion to quash the indictment may be dismissed with the observation that a motion to quash an indictment is ordinarily addressed to the discretion of the court, and therefore a refusal to quash cannot generally be assigned as error." Citing U. S. v. Rosenberg, 7 Wall. 580, 19 L. Ed. 263; U. S. v. Hamilton, 109 U. S. 63, 3 S. Ct. 9, 27 L. Ed. 857; Logan v. U. S., 144 U. S. 263, 12 S. Ct. 617, 36 L. Ed. 429.

In 22 Cyc. 413, it is said: "A motion to quash an indictment is ordinarily addressed to the discretion of the court, the accused not being entitled to demand a quashal as a matter of right. As refusal to grant the motion is for this reason not usually assignable error."

The above text is well supported by authorities cited.

■ 2. It is contended that the evidence was insufficient to warrant the submission of the case to the jury. It is true that there is no evidence that the defendant falsely represented his financial standing as alleged in the indictment. But we held in the Havener Case, 49 F. (2d) 196, and in the case of Butler v. U. S., 53 F. (2d) 800, and the many authori-

ties cited therein, that you did not need to prove the falsity of all the representations alleged. By the use of the letterheads, stating that he was a wholesale merchant, and the method of doing business, we think there was a representation made to the victim that he intended to pay for the goods bought or to ship the goods sold. The mere fact that he entered into a contract is a promise and representation to that effect. Of course, the fact that he did not keep the contract is no criminal offense; but if at the time he entered into the contract he had no intention of paying for the goods, then he would procure the goods by false promises and a crime has been committed. Of course, the evidence is circumstantial, but it leaves no doubt in our minds that the defendant was doing exactly what he was charged with, and that is, procuring money and farm products in pursuance of a scheme to defraud those with whom he dealt. We believe, therefore, there is evidence from which a jury could so find.

■ 3. That there was error in permitting the introduction of an independent transaction. We think that this evidence was admissible as a similar transaction for the purpose of proving intent and solicitation. The fact that it was not successful is immaterial.

■ 4. The principal complaint is that the court incorrectly charged the jury. On the question of intent, the charge reads:

"This statute makes the intent an essential ingredient of this crime. That is, the intent of the defendant to injure or defraud is an indispensable element. Intent, gentlemen, is something that in a way exists in a man's mind. You cannot always prove it by exact and demonstrable evidence. For that reason a man's intent has to be judged to a certain extent at least by all the surrounding facts, by his conduct, and by judging him as reasonable, prudent men, experienced in the everyday affairs of life, judge each other.

"The law presumes that every man intends the legitimate results of his acts, the consequences of his acts. Wrongful acts knowingly or intentionally committed can neither be justified nor excused on the ground of innocent intent. The color of the act determines the complexion of the intent.

"If, therefore, you believe that this defendant, when he wrote these letters, had the intent to obtain the property of these people or their money, fraudulently and without giving them anything in return, and that with that intent he mailed these letters and obtained their property, then you will be justi-

fied in finding that the necessary intent existed, and find him guilty. This intent, however, gentlemen, taken from the acts of the defendant, is rebuttable, and if there is other proof in the case which would repel the presumption which ordinarily arises from the things done, you must give careful attention to any such facts or evidence which show the lack of intent or purpose in each particular case. Therefore, it is your duty in deciding this question of intent to consider all the testimony together with all the evidence, and determine whether you are satisfied beyond a reasonable doubt that the act which the defendant is charged with doing was done with the intent to injure and defraud these people. And it is solely within your province to pass upon this question of intent, you being the sole judges of the facts in this case.

"The mere fact that these people lost money, the mere fact that this defendant did not pay his bills or his obligations incurred, does not necessarily mean that he had this intent to defraud. You must find that it existed independent of that. So on this question of intent, gentlemen, take all the evidence and consider it fairly, and decide whether this defendant in his mind intended when he wrote these letters and solicited this business or offered this property for sale, or to buy property from these various people who testified —intended a legitimate business transaction or not. If he did, then he is not guilty, irrespective of the fact that he did not pay or deliver. On the other hand, if he had no intention of paying them, but was simply trying to get them to give up their money or property as the result of this fraudulent scheme, then it is your duty to find him guilty irrespective of whether they actually parted with their property or not.

"Furthermore, you are instructed that before you can find the defendant guilty you must find that the evidence, taken as a whole, together with all reasonable inferences therefrom, establishes no other hypothesis but that of guilt. If the evidence as a whole, fails to exclude every other hypothesis, than that of guilt, or if you can reconcile the evidence upon a hypothesis of innocence, it is your duty to find the defendant not guilty."

As a whole we think it is sufficient. The particular exceptions taken were to the part of the charge as to the defendant being responsible for his own acts and as to the presumption that every man intends the legitimate consequence of his own acts. In Agnew v. United States, 165 U. S. 53, 17 S. Ct. 235, 41 L. Ed. 624, the court approved an in-

struction given in this identical language. The court, however, said the presumption is rebuttable, and if there is other proof in the case which would repel the presumption, they must consider that, and then acquit unless they were satisfied beyond a reasonable doubt that the defendant had the intent charged. The court does not shift the burden of proof as was done in Shaddy v. United States (C. C. A.) 30 F.(2d) 340, but simply said there was a presumption of law which was rebuttable. Elsewhere in the instructions the court several times said that intent was an essential ingredient of the crime and that it must be proven by the government beyond a reasonable doubt. The court says that the sole question is whether this man was dealing honestly with these people, or not. That sentence alone is objectionable. But in the same paragraph he defined "honesty" as meaning whether he was carrying on a legitimate business, or whether he never had any intention of paying for the products he bought, or delivering the merchandise that he sold. I think the explanatory part of the paragraph very largely takes out the sting.

As a whole, we think the jury must have understood that they must find from the evidence beyond a reasonable doubt that the defendant had a specific intent to defraud; that they might gather that from the circumstances of the case, and in arriving at a decision of that question, the jury might consider that a man is presumed to intend the consequences of his wrongful acts.

We think using these letterheads and leading business men into the belief that they were to be paid for these goods, when he did not intend to pay therefor, is a wrongful act.

Affirmed.