**Billie Sol ESTES, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**
**No. 20519.**

United States Court of Appeals
Fifth Circuit.
Aug. 10, 1964.

Rehearing Denied Sept. 21, 1964.

---

John D. Cofer, Austin, Tex., John P. Dennison, Pecos, Tex., Jack T. Niland, El Paso, Tex., Hume Cofer, Cofer, Cofer & Hearne, Austin, Tex., for appellant.

Fred J. Morton, Asst. U. S. Atty., El Paso, Tex., Marshall Tamor Golding, Atty., Dept. of Justice, Washington, D. C., Ernest Morgan, U. S. Atty., Herbert J. Miller, Jr., Asst. Atty. Gen., Rufus D. McLean, Beatrice Rosenberg, Edward J. Lee, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before HUTCHESON and RIVES, Circuit Judges, and GROOMS, District Judge.

GROOMS, District Judge.

Appellant, Billie Sol Estes, along with three other individuals and the Superior Manufacturing Company, a corporation, were charged in a twenty-nine count indictment returned by a grand jury of the Western District of Texas, El Paso Division, with violating Sections 1341, 2314 and 371 of Title 18, U.S.C.A., relating to mail fraud,[1] the interstate transportation of fraudulent securities,[2] and conspiracy to commit those offenses.[3] Two of the mail fraud counts [4] and

---

1. Counts I to XVI.

2. Counts XVII to XXVIII.

3. Count XXIX.

4. Counts IX and XII.

eleven of the transportation counts [5] were transferred to the Pecos Division of the District.

The charges against all defendants other than appellant were disposed of prior to trial on pleas of guilty.

The case against appellant went to trial by jury on sixteen counts. Counts II and X were dismissed prior to the submission of the case to the jury. Appellant was found not guilty on nine counts,[6] but was found guilty on Counts I, VII, VIII, XIV for mail fraud, and Count XXIX for conspiracy. He was sentenced to five years each on Counts I, VIII, and XXIX for a total of fifteen years. He was also sentenced to five years each on Counts VII and XIV to run concurrently with the sentences on Counts I and VIII, respectively.

This appeal confronts us with a record of almost twenty two hundred pages covering a trial extending from March 11, to March 28, 1963. Appellant in a comprehensive attack upon the proceedings below rests for a reversal on a two hundred-page brief and a twenty-five-page supplemental brief. Appellee in a staunch defense of the regularity of the proceedings below replies with a brief of one hundred and twenty-five pages, with a forty-four page appendix. The cases, constitutional and statutory provisions, treatises, and miscellaneous, including Hawthorne's *The Scarlet Letter*, and Matthew's Gospel cited and relied on run into the hundreds. All of which presents us with the difficult assignment of winnowing wheat from chaff in order to determine whether there are real and substantial errors revealed by the record.

In short summary the evidence with some variation between the various transactions discloses that appellant, by himself or by agents, would approach various farmers and businessmen and persuade them to enter into conditional sales contracts, chattel mortgages and leases for the purchase or lease of specific anhydrous ammonia tanks and related equipment from the Superior Manufacturing Company of Amarillo, Texas, and the Lubbock Machine and Supply Company of Lubbock, Texas. The tanks were described by serial number on the various instruments and were to serve as collateral thereto. These tanks did not exist but were represented to those with whom appellant and his agents had their dealings as being in existence and that they would constitute such collateral. After the instruments were executed they were sold and assigned to various finance and investment companies. A substantial portion of the money disbursed by such purchasers was paid to appellant through his agents or through middlemen.

Appellant and those associated with him paid to the parties executing the instruments a sum equivalent to ten percent of the face value of the instruments to induce them to execute the paper. For the same reason they also agreed to lease back from said parties the tanks and related equipment for a term of years co-extensive with the maturity of the paper, to pay the parties the same amount of monthly payments as they were required to pay as makers, and to save them harmless from having to pay out any of their own funds in making the payments required by the instruments. In some cases the makers of the instruments executed statements that the tanks had been delivered to them.

Superior Manufacturing Company was under the domination and control of appellant and his co-defendants.

The prosecution contends that the various transactions in all their ramifications constituted a gigantic scheme and conspiracy to defraud with the use of the mails to those ends. The counts upon which a conviction was had are so couched.

More than $20,000,000.00 was involved in the purchase of Superior tank paper. Most of this is unpaid and in default.

---

5. Counts XVII to XXIII, and XXV to XXVIII.

6. Counts III to VI, XI, XIII, XV, XVI, and XXIV.

Appellant's chief insistence is placed upon the following: that the court erred in (1) refusing to permit him to interrogate the grand jury before it returned the indictment as to bias and prejudice; (2) failing to transfer the entire cause to the Pecos Division; (3) not permitting a separate and individual examination of the jury venire; (4) refusing to postpone the trial or to transfer the same to another Division of the District; (5) refusing to permit him to interrogate the jury after the close of the evidence as to whether they had read certain alleged prejudicial news stories while they were separated; (6) giving a modified "Allen charge"; (7) submitting charges in writing in response to jurors' questions and not in open court in the presence of of the defendant; (8) charging the jury on presumed intent; (9) failing to sequester the jury; and (10) not directing a verdict, particularly with respect to the conspiracy count.

 After the grand jury returned an indictment on April 5, 1962, it was reconvened on June 20, 1962. On that date appellant appeared and moved the court to permit him to exercise challenges for cause as to the individual grand jurors based upon alleged bias and prejudice which he claimed had resulted from the extensive publicity given to the case. The motion was denied. The indictment upon which he was prosecuted followed.

Criminal Rule 6(b) (1) provides that a defendant may challenge the array of grand jurors:

"* * * on the ground that the grand jury was not selected, drawn or summoned in accordance with law, *and may challenge an individual juror on the ground that the juror is not legally qualified.* Challenges

shall be made before the administration of the oath to the jurors and shall be tried by the court." [7] (Emphasis supplied)

The oath was administered when the jury was first impanelled. This jury had already indicted appellant for substantially the same offenses for which he was re-indicted. The superseding indictment added some new counts based upon additional instances of the same conduct and changed some of the verbiage.

Judge Holtzoff, in United States v. Knowles, D.D.C., 147 F.Supp. 19, answers concisely, and we think correctly, the contentions made by appellant, when he said:

"Challenges for bias, or for any cause other than lack of legal qualifications, are unknown as concerns grand jurors. No provision is made for peremptory challenges of grand jurors and no such challenges are permitted. Likewise no *voir dire* examination exists in respect to grand jurors. In other words, the status of a member of a grand jury may not be questioned except for lack of legal qualifications."

 There was no specific showing of bias and prejudice by appellant resulting from the widespread publicity, and the fact alone of such publicity did not in itself constitute a sufficient showing of bias and prejudice. See Beck v. Washington, 369 U.S. 541, 82 S.Ct. 955, 8 L. Ed.2d 98.

 Appellant made a timely motion under Rule 21(b) to transfer the entire indictment to the Pecos Division of the Court contending, that he was entitled to such relief under 18 U.S.C.A. § 3237(b). This motion was denied. The motion to transfer was addressed to

7. Significantly, the preliminary draft of the Rule specifically authorized a challenge for bias and prejudice, but the provision was omitted from the final draft. See 4 Barron, Federal Practice and Procedure, § 1892, p. 44, where it was said: "The preliminary draft of this rule [6 (b)(1)] proposed a ground of challenge to grand jurors for bias or prejudice. This, however appropriate in the selection of trial jurors, is wholly irrelevant and improvident in the case of members of the grand jury which prefers the charge and which of course should be scrupulously fair but not necessarily uninformed or impartial."

the sound discretion of the trial court, and should not be overturned where there is no clear showing of abuse. Addison v. United States, 5 Cir., 317 F.2d 808; Greenhill v. United States, 5 Cir., 298 F.2d 405. We find no such showing. Section 3237(b) of Title 18 U.S.C.A., is without application. Under our ruling in United States v. Choate, 5 Cir., 276 F.2d 724, some counts may be transferred and not others. The specification lacks merit.

■■ Before announcing ready for trial appellant made a motion for postponement or in the alternative for a transfer of the case for trial to the San Antonio Division of the District. This motion was grounded on alleged prejudice claimed to have been engendered by a great volume of adverse publicity given to the case by the news media in the El Paso Division. The court deferred a ruling on the motion until the jurors were examined on their voir dire then overruled the motion. From this ruling it would appear that the trial judge was of the view that nothing was shown in the voir dire examination which indicated a need for postponement or for transferring the case in order to afford the defendant a fair and impartial trial. Such matters are within the discretion of the trial judge. Rizzo v. United States, 8 Cir., 304 F.2d 810. In Greenhill v. United States, supra, where defendant moved to transfer the case to another district because of undue prejudice resulting from widespread publicity, we said:

"The decision of the trial court on such a motion will be affirmed where as here no abuse of discretion is shown, and lack of abuse of discretion is buttressed where as here there was no showing in the course of the voir dire examination that any adverse publicity had effected the ability of the jurors to reach an unprejudiced decision. Kott v. United States, 5 Cir., 1947, 163 F.2d 984, cert. den. 333 U.S. 837, 68 S.Ct.

609, 92 L.Ed. 1122; Mayo v. Blackburn, 5 Cir., 1958, 250 F.2d 645, cert. den. 356 U.S. 938, 78 S.Ct. 780, 2 L.Ed.2d 813; and United States v. Moran, 2 Cir., 1956, 236 F.2d 361, cert. den. 352 U.S. 909, 77 S.Ct. 148, 1 L.Ed.2d 118."

In Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751, the Court said:

"It is not required * * * that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case."

In Beck v. Washington, supra, it was argued that there was such a strong case of adverse publicity that any jury selected in Seattle must be held to be presumptively biased. The court stated that there could be no constitutional infirmity in the court's ruling denying a continuance and a change of venue if the defendant actually received a trial by an impartial jury.

Here, the impaneling of the jury took almost three days. The proceedings in respect to the same cover over three hundred pages. Every challenge for cause by appellant was sustained.[8]

There was no abuse of discretion by the trial court in denying appellant's motion for continuance and for a transfer to the San Antonio Division.

Before the examination of the venire began appellant requested that he be permitted to examine the jurors individually and separate from each other with reference to their knowledge of the case and what they had read. The request was renewed during the course of the examination.

8. R 765.

■ Appellant relies on United States v. Accardo, 7 Cir., 298 F.2d 133, and Coppedge v. United States, 106 U.S.App. D.C. 275, 272 F.2d 504. In each case the offending publicity occurred during the course of the trial.[9] In Accardo there were inadequate admonitions during the course of the trial with respect to the jurors reading newspaper articles and listening to broadcast accounts relating to the trial. The court stated that the general admonitions at the beginning of the trial and on voir dire did not supply the deficiency. In Coppedge there was an absence of admonitions. It is clear that these cases were ruled on the special facts there but not here involved. On the issue of prejudice, "each case must turn on its special facts." Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250. There was no lack of adequate admonishment in this case, either at the beginning of the trial, on voir dire, or during the course of the trial, as will be more fully shown in the consideration of the following specification.

■ At the close of the evidence appellant requested the court to interrogate the jurors with respect to all publicity that they may have encountered during the trial and that the court conduct this interrogation privately and individually. This the court refused to do.

During the course of the trial the jury was admonished some thirty times not to read newspaper articles or listen to broadcasts relative to the trial. The admonitions were full and adequate, and an admonition preceded every recess during which the jurors were separated. It is not to be presumed that they violated such admonitions. Rizzo v. United States, supra. There was no showing that any of the jurors had violated the admonitions, and in the absence of such showing the court correctly denied the request.

■ The trial court did not err in refusing to sequester the jury. Since Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021, the rule in the Federal Courts has been that this is a matter within the sound discretion of the trial judge.[10] United States v. Holovachka, 7 Cir., 314 F.2d 345. There was no abuse of discretion in this instance.

■ Appellant's request for three extra peremptory challenges was denied. Appellant desired to challenge jurors Goodman, Herbenor and Utterback. These jurors were on the panel of twenty-eight remaining after the challenges for cause. Under Criminal Rule 24(b) he was entitled to ten peremptory challenges. Where there is more than one defendant the court may allow additional challenges. Appellant was tried alone. He was refused no challenge for cause. The court correctly denied the request.

■ Appellant complains bitterly of that portion of the court's charge dealing with presumed intent which appears in italics in paragraph (2) of the footnote.[11] The instruction, of course, must

9. See Rizzo v. United States, 8 Cir. 304 F. 2d 810, at 815, 816.

10. See Footnote 1 to Kleven v. United States, 8 Cir., 240 F.2d 270.

11. (1) "If, as to any count of the indictment, you find, or have a reasonable doubt thereof, that the act alleged by the count to have been fraudulent was not intentionally and willfully done, then you shall acquit the defendant of such count.

* * * * *

(2) *"The law provides a rebuttable presumption that every man intends the natural and probable consequenc-*

*es of his own acts. Wrongful acts knowingly or intentionally committed can neither be justified nor excused on the ground of innocent intent. The color of the act determines the complexion of the intent. The intent to injure or defraud can be presumed when the unlawful act which results in loss or injury is proved to have been knowingly committed. It is a well settled rule that the intent can be presumed and inferred from the result of the action.* If a man knows that the act he is about to commit will naturally or necessarily have the effect of injuring or

be weighed in the context in which it appears in the charge. Appellant claims that this in effect was the charge condemned in Mann v. United States, 5 Cir. 319 F.2d 404, cert. denied 375 U.S. 986, 84 S.Ct. 520, 11 L.Ed.2d 474. Appellant reaches this conclusion by attempting to equate the words, "rebuttable presumption" used in this charge with the words, "So unless the contrary appears from the evidence." etc.,[12] in the Mann case. In Mann, we said:

> "If the charge had ended when the jury was told that a person is presumed to intend the natural consequences of his own acts, when considered in the light of the charge as a whole, there would have been no error. When the words, 'So unless the contrary appears from the evidence' were introduced, the burden of proof was thereupon shifted from the prosecution to the defendant to prove lack of intent."

The language in Mann was not that employed in this case nor was the challenged portion of the charge immediately accompanied by a charge that "fraudulent intent is not presumed or assumed," as more fully appears in the charge. Here the presumption was predicated upon affirmative acts and not solely upon acts of omission which were consistent with honest intentions and where intent was not inherent in the acts themselves as in the case of failing to file a tax return, or in filing one from which income is omitted.

The challenged portion of the charge here involved except for the word "rebuttable" preceding the word "presumption" and with other inconsequential variations is a verbatim copy of the charge which was given in Pereira v. United States, 5 Cir., 202 F.2d 830, aff'd 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435.[13] No exception was taken to the charge in Pereira. However, the part to which particular exception is here taken is of more ancient vintage than that case. It was given in Agnew v. United States, 165 U.S. 36, 53, 17 S.Ct. 235, 242, 41 L.Ed. 624,[14] was there excepted to, and was held by the court to be "unexcep-

defrauding another, and he voluntarily and intentionally does that act, he may be chargeable in law with the intent to injure or defraud. These terms used in the law mean nothing more than that general intent to injure or defraud which may arise, in contemplation of law, when one willfully or intentionally does that which is illegal of fraudulent, and which, in its necessary and natural consequences, must injure another. (3) *"Fraudulent intent is one of the essential elements of the offenses with which this defendant is charged. Fraudulent intent is not presumed or assumed;* it is personal and not imputed. One is chargeable with his own personal intent, not that of some other person. Bad faith is an essential element of fraudulent intent. (4) " 'Willful' means more than 'intentionally' and 'voluntarily' and includes evil motive or bad purpose, *and such an intent must be clearly proved or inferred from the evidence beyond a reasonable doubt to warrant a conviction.* (5) "Good faith constitutes a complete defense to one charged with an offense of which fraudulent intent is an essential element. One who acts with honest intention is not chargeable with fraudulent intent. * * * (6) "In order to establish same [fraudulent intent], it must be shown beyond a reasonable doubt that such person knowingly and intentionally tried to deceive another. * * *" (Emphasis supplied)

12. " 'It is reasonable to infer that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted. So unless the contrary appears from the evidence, the jury may draw the inference that the accused intended all the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any act knowingly done or knowingly omitted by the accused.' "

13. The charge does not appear in the report of the case, but appears from the transcript which has been lodged in this cause, at page 212 of Case No. 13980, and Supreme Court transcript 130 and 131.

14. " 'The law presumes that every man intends the legitimate consequence of

tional as a matter of law." The word, "rebuttable" is implicit in the Agnew charge, since it is safe to assume that the court did not mean to charge that there was a conclusive presumption.[15] The Agnew charge has been many times approved and never repudiated.

The portion of the charge complained of, though meeting the test of rational connection between acts and intent, Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519, Hubbard v. United States, 9 Cir., 79 F.2d 850, was not directed to any particular action of appellant. It contained a correct statement of the general presumption of intent. It was immediately followed by a clear-cut instruction specifically enumerating the *sine qua non* of the offenses involved.[16] The court without equivocation charged that the appellant was presumed innocent until proven guilty beyond a reasonable doubt. When the instruction is read as a whole there does not appear any such inconsistency or other vice as would render it prejudicially erroneous.

█ Refused charge 25 was covered by the precise language of the oral charge or was covered in substance by that charge. The failure to repeat instructions already given or to charge in the exact words requested was not er-

ror. Agnew v. United States, supra; Lemley v. Christophersen, 5 Cir. 150 F. 2d 291.

█ In the afternoon of the day the case was submitted, the jury tendered a request for a definition of fraud and of conspiracy to defraud. The court drafted and sent to the jury a definition of fraud [17] in what appears to be in the identical words as those employed in the charge in chief.[18] It also drafted and submitted a definition of conspiracy [19] in what likewise appears to be in almost the precise words.[20] On the following day the jury made another written request.[20a] In a written reply the court advised the jury in capsulated form, what in substance had already been stated to them, that they must determine that a conspiracy was formed before the commission of any overt act and that in order for the jury to find that a conspiracy was formed they must find beyond a reasonable doubt that there was a combination of persons by concerted action to accomplish the object of violating either the mail fraud statute or the statute prohibiting the interstate transportation of fraudulently obtained securities worth more than $5,000.00.[21] Appellant's counsel stated that: "We think the charge is not unfavorable" but that it was not all-inclusive. Appellant's counsel was pres-

---

his own acts. Wrongful acts knowingly or intentionally committed can neither be justified nor excused on the ground of innocent intent. The color of the act determines the complexion of the intent. The intent to injure or defraud is presumed when the unlawful act, which results in loss or injury, is proved to have been knowingly committed. It is a well-settled rule, which the law applies in both criminal and civil cases, that the intent is presumed and inferred from the result of the action. If, therefore, the funds, moneys, or credits of the First National Bank of Ocala are shown to have been either embezzled or willfully misapplied by the accused, and converted to his own use, whereby, as a necessary, natural, or legitimate consequence, the association's capital was reduced, or placed beyond the control of the directors, or its ability to meet its engage-

ments or obligations or to continue its business was lessened or destroyed, the intent to injure or defraud the bank may be presumed.' "

15. In Roper v. United States, 10 Cir., 54 F.2d 845, a mail fraud case, the court approved the Agnew charge where the trial court had further said in its charge that the presumption was rebuttable.

16. See paragraphs (3), (4), (5) and (6) of the charge, Footnote 11.

17. R 2000–1

18. R 1969, 1960 and 1964

19. R 2001–2

20. R 1972, 1976, 1974–5 and 1956.

20a. "As pertains to Count XXIX is the establishment of fraud necessary before an overt act is determined?"

21. R 2006.

ent in chambers at all times in question. He objected to this charge as he had to the others because they were not given to the jury in open court in the presence of the defendant. The charge was a correct statement of the law. Every opportunity was afforded counsel to object to the replies made by the court. This he did but insisted that the court expand its replies to cover intent and other matters not within the inquiries submitted. Later the court with the consent of the parties sent a copy of his oral charge to the jury.[22]

If Rule 43 [23] is like unto "the law of the Medes and Persians which altereth not," then 52(a) is without operative effect in the area covered by Rule 43. The two must be considered together.

Where there is any reasonable possibility of prejudice from the defendant's absence at any stage of the proceedings, a conviction cannot stand. We do not concur in the practice here followed. We conclude, however, that the matters complained of were not error to reverse, it not being apparent from the record that there was prejudice to appellant's substantial rights. Fed.R. Crim.P. 52(a); Walker v. United States, 116 U.S.App.D.C. 221, 322 F.2d 434; and Jones v. United States, 10 Cir. 299 F.2d 661. In the latter case the court said:

"Counsel was present at all stages and had full opportunity to object to any irregularity. The juror's inquiry related to a question of law, not fact, and was adequately covered by the court's instructions given

earlier in the appellant's presence. Appellant's presence would have been no aid to his defense and it is apparent that he suffered no prejudice." [24]

This case was submitted to the jury at 11:15 a. m., March 26, 1963. At 3:30 p. m. on March 27 the jury advised the court that it was unable to agree. A so-called "dynamite" charge was given. There was only one part of the charge [25] to which exceptions were taken. The jury continued its deliberations for the remainder of the day and apparently for some period during the evening, and at 1:30 p. m. on the 28th reported that it had reached a verdict.

The charge given in this case was not the charge approved in Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528. If the charge can be said to be coercive it falls far short of Allen in that respect. As a part of the charge the court stated:

"[T]he Court doesn't want anybody to surrender or compromise any of his or her convictions that he or she conscientiously holds. We don't want any compromise verdict, but we don't want a verdict where there is any coercion by the majority on the minority if you are divided unequally, * * * *"

Like statements were repeated four times. Three times the judge stated that he was not going to punish the jurors by just holding them together. It was the final decision of the jurors that they be held together to "try" for a verdict. If the charge can be denominated a "dynamite" charge it appears to

---

22. R 2027.

23. "The defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by these rules."

24. See also Outlaw v. United States, 5 Cir. 81 F.2d 805, and United States v. Compagna, 2 Cir. 146 F.2d 524, 528. In Evans v. United States, 6 Cir., 284 F.2d

393, the jury sent a note asking for five different matters relating to evidence. Under facts there involved the court reversed.

25. "This has been an expensive trial to the Government and to the defendant too and, of course, the Government's expenses are paid by the taxpayers, which includes you, so it is important that every reasonable and proper effort be given an honest jury to try to arrive at a verdict, if that is possible or probable."

have been a dud in view of the twenty-one hours that elapsed from the giving of the charge until the verdict was returned.

In Logsdon v. United States, 6 Cir., 253 F.2d 12, it was held that the trial judge did not err when he told the jury that "they had been there for three days, that it was a tremendous expense and burden to the parties to retry any case, and to the Government," when the statement was coupled with the further statement that no juror was to surrender his conscientious convictions. See also Kawakita v. United States, 9 Cir., 190 F.2d 506, 524, aff'd 343 U.S. 717, 72 S.Ct. 950, 95 L.Ed. 1249, where the trial court alluded to the expense that had been incurred and that would be incurred on another trial. Likewise Wolin v. United States, 4 Cir., 211 F.2d 770, cert. denied 348 U.S. 819, 75 S.Ct. 30, 99 L.Ed. 645.

Since the court's remarks were replete with admonitions against either coercion, compromise or surrender of individual convictions, the elucidation of the obvious can hardly be deemed coercive. When the portion of the charge involved is considered in relation to the whole, as it must be, we conclude, without endorsing the language employed, that its giving did not affect the substantial rights of appellant, Rule 52(a),[26] and presents no error to reverse.

Where an indictment contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet, it conforms to the test of sufficiency. United States v. Debrow, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92. Counts, I, VII, VIII, XIV and XXIX meet this test as well as that of definiteness, Rule 7(c).

The court did not err in overruling appellant's motion for a directed verdict for insufficiency of the evidence to sustain the counts upon which a verdict of guilty was returned. The other alleged errors are so wanting in merit as to be undeserving of a further extension of this opinion.

From beginning to the end this case was hard fought. The ingenuity of counsel was matched only by the skill of the trial judge and his patient endeavour to avoid error and to insure appellant a fair trial. In each he succeeded well. The judgment of conviction is

Affirmed.

---

26. "Harmless Error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."