**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Daniel Mark SCHEFFER et al., Defend-
ants-Appellants.**

No. 71–2921.

United States Court of Appeals,
Fifth Circuit.

June 22, 1972.

Rehearing Denied July 28, 1972.

Rehearing En Banc Denied
Sept. 11, 1972.

William F. Walsh, Bennett Stokes, Houston, Tex., for Scheffer and Stecher.

Abraham Kazen, III, Laredo, Tex., for Collins.

Anthony J. P. Farris, U. S. Atty., James R. Gough, Edward B. Mc-Donough, Jr., Anthony C. Aguilar, Asst. U. S. Attys., Houston, Tex., Henry E. Petersen, Asst. Atty. Gen., Beatrice Rosenberg, Jerome Feit, Attys., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before AINSWORTH, GODBOLD and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Fred Collins, Daniel Scheffer, and David Stecher were tried jointly and convicted of importing a narcotic drug into the United States in violation of 21 U.S.C. § 174.[1] On appeal before this court appellants contend that illegally-seized evidence was admitted against them in two separate instances; that the district court erroneously failed to inform counsel of its proposed jury instructions in contravention of Rule 30 of the Federal Rules of Criminal Procedure, Title 18, U.S.C.; and that the district court erred

1. In pertinent part 21 U.S.C. § 174 provides as follows:

"Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000. For a second or subsequent offense (as determined under section 7237(c) of the Internal Revenue Code of 1954), the offender shall be imprisoned not less than ten or more than forty years and, in addition, may be fined not more than $20,000."

by refusing to sentence the principal prosecution witness until after the witness had testified. We hold that Collins and Scheffer were convicted with evidence obtained in violation of their Fourth Amendment rights, and the convictions of these two appellants must be reversed. The conviction of appellant Stecher is affirmed, however, since his Fourth Amendment rights were not abridged and the other assignments of error are all without merit.

The three appellants in this case were arrested as part of a larger group of nine persons who smuggled cocaine across the Mexican border at Laredo, Texas. The smuggling operation had its beginnings on November 22, 1970, when Collins, Scheffer and Robert Saenz went to Grand Junction, Colorado, for the purpose of producing a rock music concert at a local college. While in Grand Junction, Collins, Scheffer and Saenz had several conversations with Bernt Meyer and Garry Johnson. During one of these conversations, Meyer indicated that he had previously smuggled cocaine from South America and that he would be interested in repeating the experience.

In early December of 1970, Scheffer and Collins visited Saenz in San Luis Obispo, California, and asked Saenz to contact Meyer about bringing a shipment of cocaine into the United States. Saenz went to see Meyer and Meyer agreed to smuggle the cocaine provided he was advanced $7,000.00 and provided he could have one pound of the cocaine.[2] Scheffer, Collins and Saenz collected money from various sources and presented the cash advance to Meyer who was waiting at the airport at Santa Maria, California. Meyer took the money and departed for South America by airplane.

Several days later, Meyer, having made his way to Mexico City, Mexico, telephoned Saenz and requested additional funds to cover some unexpected expenses. Saenz notified Collins and Scheffer of Meyer's request, and shortly thereafter Collins arrived at Saenz' home, accompanied by appellant Stecher. In the presence of Saenz, Stecher gave Collins $1,000.00 which Collins handed over to Saenz. Saenz kept $300.00 of this money and sent the remaining $700.00 to Meyer.

On December 25, 1970, Meyer was in Nuevo Laredo, Mexico, where he placed a telephone call to John Kerr and Jackson Lallerstedt in Atlanta, Georgia. Pursuant to Meyer's instructions Kerr and Lallerstedt drove to Nuevo Laredo in a Volkswagen van and received approximately 1½ pounds of cocaine from Meyer. While Kerr and Lallerstedt hid the cocaine in two separate places in the van, Meyer crossed the border by taxi and registered at a motel in Laredo, Texas. Kerr and Lallerstedt then proceeded to drive the van over the International Bridge into Texas.

During a routine border search customs inspectors discovered one of the caches of cocaine and immediately placed Kerr and Lallerstedt under arrest and fully informed them of their rights. After a short period of interrogation Kerr and Lallerstedt advised customs officials that they were part of a larger group involved in a smuggling operation and that they desired to cooperate in the apprehension of the other smugglers. The two men disclosed Meyer's involvement in the operation and stated that Meyer could be found at the Ramada Inn in Laredo, Texas.

Armed with this information, customs agents went to the Ramada Inn, found that Meyer was registered and knocked on his door. When Meyer opened the door he was placed under arrest and taken to the county jail where he was incarcerated for the night.

The next day Meyer also decided to cooperate, and he and customs officials devised a plan for the arrest of Saenz. Meyer was released on bond and supplied with two plastic bags containing a small amount of cocaine mixed with a

---

2. There is testimony in the record that Meyer was somewhat addicted to the use of cocaine.

large quantity of an inert material, similar in appearance to cocaine. Accompanied by customs agents, Meyer boarded a government aircraft and flew from Texas to California where he arranged a meeting with Saenz. As customs agents observed from afar, Saenz arrived at the specified meeting place and received the dummy packages of cocaine from Meyer. Saenz was then arrested.

At this point one of the defendants informed customs agents that an undiscovered quantity of cocaine still lay hidden in the Volkswagen van. The agents in California promptly notified customs officials in Texas of this information and a further search of the vehicle revealed an additional pound of cocaine.

Meanwhile, Saenz, not to be outdone by his associates, decided that he too would cooperate with the authorities in the apprehension of the other smugglers. Accordingly, Saenz telephoned the Scheffer house in California and informed Scheffer and Collins that Meyer was on his way with the cocaine. Meyer and Saenz then picked up the dummy packages of cocaine, which now contained a small amount of fluorescent dust, and proceeded to Scheffer's residence. While customs agents watched from concealed positions, Meyer and Saenz entered the house through the front door. The agents waited a few minutes and entered the house without a search warrant. Scheffer, Collins and Johnson were placed under arrest and taken to a dark room where agents checked them with a fluorescent light and discovered fluorescent areas on the hands, on the mustache and inside the nose of each defendant. On a table in the living room agents observed a knife, a spoon and the opened packages of substitute cocaine.

Prior to the raid on the house, Saenz had informed Scheffer that Kerr had been arrested and was in need of $1,000.00 to make his bail bond. After receiving a telephone call, Scheffer told Saenz that Stecher was sending the bail money by telegraph. The following day, Saenz and customs agents went to the local Western Union office and picked up a money order for $1,000.00 from Stecher. Stecher was subsequently arrested.

An indictment was initially returned charging Kerr, Lallerstedt, Meyer, Saenz, Johnson, Collins, Scheffer and Stecher with various counts involving the unlawful importation of narcotics. However, the government filed a motion to sever Johnson, Collins, Scheffer and Stecher due to the expected use of statements from the cooperating defendants which incriminated the other defendants. See Bruton v. United States, 1968, 391 U.S. 123, 88 S.Ct. 1620, 20 L. Ed.2d 476. The district court granted the motion and the severed defendants were tried jointly before a jury under a three-count indictment alleging that the defendants knowingly imported, transported and concealed cocaine and conspired to do so, all in violation of 21 U. S.C. § 174. The jury found Johnson innocent, but returned a verdict of guilty as to the other three defendants, and this appeal followed.

## I.

Appellants' first contention relates to the admission into evidence of the packages of cocaine seized from the Volkswagen van during the border search and at the subsequent search after the vehicle was taken into custody. Citing Jones v. United States, 1960, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, appellants object to the district court's holding that they lacked standing to challenge the legality of these searches. The two factors which conferred standing in *Jones,* however, are not present here. In *Jones* police officers searched an apartment occupied by the defendant and found narcotics. At the trial the government based its entire case on possession of these narcotics by the defendant. Because the defendant failed to allege an ownership interest in either the narcotics or the apartment, the trial court held that the defendant did not have standing to contest the legality of the search which produced the damaging evidence. The Supreme Court refused

to place the defendant in such a dilemma and based its reversal on two grounds:

"As to the first ground, we are persuaded by this consideration: to hold to the contrary, that is, to hold that petitioner's failure to acknowledge interest in the narcotics or the premises prevented his attack upon the search, would be to permit the Government to have the advantage of contradictory positions as a basis for conviction. Petitioner's conviction flows from his possession of the narcotics at the time of the search. Yet the fruits of that search, upon which the conviction depends, were admitted into evidence on the ground that petitioner did not have possession of the narcotics at that time. The prosecution here thus subjected the defendant to the penalties meted out to one in lawless possession while refusing him the remedies designed for one in that situation. It is not consonant with the amenities, to put it mildly, of the administration of criminal justice to sanction such squarely contradictory assertions of power by the Government. The possession on the basis of which petitioner is to be and was convicted suffices to give him standing under any fair and rational conception of the requirements of Rule 41(e)." 362 U.S. at 263, 264, 80 S.Ct. at 732.

The court additionally held that the defendant was entitled to standing by virtue of his being legitimately present on the searched premises.

"As a second ground sustaining 'standing' here we hold that petitioner's testimony on the motion to suppress made out a sufficient interest in the premises to establish him as a 'person aggrieved' by their search. That testimony established that at the time of the search petitioner was present in the apartment with the permission of Evans, whose apartment it was." 362 U.S. at 265, 80 S.Ct. at 733.

Contrary to *Jones,* the government's case against the instant appellants was not based on possession of narcotics at the time of the search. Indeed, there is no allegation in the indictment, nor was it proved at the trial, that appellants themselves ever possessed the cocaine seized from the Volkswagen. Equally important and equally distinctive from *Jones* is the undisputed fact that appellants were not present in or around the Volkswagen at the time it was searched. Under these circumstances, standing does not attach because appellants failed to establish that they themselves were the objects of the search or that they were the victims of an invasion of privacy. This result is unquestionably required by the language in *Jones:*

"In order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else." 362 U.S. at 261, 80 S.Ct. at 731.

See also Glisson v. United States, 5 Cir. 1969, 406 F.2d 423.

■ In advancing an alternative argument on the question of standing, appellants point to the fact that the cocaine was seized from Kerr and Lallerstedt who were named as co-defendants in the original indictment and who clearly had standing to move to suppress the contraband. Appellants urge this court to accept the proposition that "a co-defendant is automatically entitled to raise the Fourth Amendment rights of a named co-defendant". Whatever validity this rule may have had in the past [3] has since been vitiated by Alderman v. United States, 1969, 394 U.S. 165, 89 S. Ct. 961, 22 L.Ed.2d 176.

"However, in the cases before us each petitioner demands retrial if any

3. See Barnett v. United States, 5 Cir. 1967, 384 F.2d 848; Hair v. United States, 1961, 110 U.S.App.D.C. 153, 289 F.2d 894.

of the evidence used to convict him was the product of unauthorized surveillance, regardless of whose Fourth Amendment rights the surveillance violated. At the very least, it is urged that if evidence is inadmissible against one defendant or conspirator, because tainted by electronic surveillance illegal as to him, it is also inadmissible against his codefendant or coconspirator.

"This expansive reading of the Fourth Amendment and of the exclusionary rule fashioned to enforce it is admittedly inconsistent with prior cases, and we reject it. The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Coconspirators and codefendants have been accorded no special standing." 394 U.S. at 171, 172, 89 S.Ct. at 965.

Accordingly, we hold that standing does not automatically extend from one co-defendant to another.

## II.

■ At the trial below Robert Saenz gave extensive testimony concerning the involvement of appellants in the smuggling operation. At the time he testified Saenz had previously been tried and convicted, but not sentenced, for his participation in the crime. In advance of trial, counsel for appellants moved the district court to sentence Saenz before he testified in the apparent hope that Saenz would receive a light sentence which would aid defense counsel in arguing to the jury that Saenz lied in order to receive leniency for his own wrongdoing. The district court denied the motion, and on appeal appellants claim this holding was erroneous for two reasons.

First, appellants contend the district court violated Rule 32(a) of the Federal Rules of Criminal Procedure, Title 18, U.S.C., by failing to impose sentence on Saenz "without unreasonable delay". The fallacy in this argument is that appellants have no standing to allege a delay in the sentencing of Saenz. The rights secured by Rule 32(a), supra, are personal to the defendant being sentenced and may not be asserted by third persons. United States v. Sherwood, 10 Cir. 1970, 435 F.2d 867. In any event, other than appellants' bare allegation, there is no indication in the record that the district court waited an unreasonable length of time in passing sentence on Saenz. See Welsh v. United States, 6 Cir. 1965, 348 F.2d 885.

Appellants also contend that the failure to sentence Saenz before he testified restricted their right to effectively impeach Saenz. We disagree. Subsequent to appellants' trial, Saenz was given an 8-year sentence. Appellants have not specified before this court any prejudice which came about as a result of their being unable to argue the exact length of Saenz' prison term. In argument before the jury, appellants' counsel fully explored the possibility that Saenz was lying to obtain clemency. Saenz was described as a person who would "frame his mother" and as "the guy who is trying to save his neck by lying". Contrary to the situation in Giglio v. United States, 1972, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104, there is no indication here that appellants were harmed by the lack of information they claim they were entitled to.

## III.

■ Appellants next contend that the district court erred by indicating to defense counsel that it would instruct the jury on the issues of venue and multiple conspiracies and then failing to do so. Under Rule 30 of the Federal Rules of Criminal Procedure, Title 18, U.S.C., counsel for both sides "may file written requests that the court instruct the jury on the law as set forth in the requests". After receiving these requests the court "shall inform counsel of its proposed ac-

tion upon the requests prior to their arguments to the jury . . ." Rule 30, supra. At the close of the evidence counsel for appellants submitted several written requests for jury instructions to the district court. After due consideration the court informed appellants that all their requested instructions would be given except the one relating to entrapment. Included among the instructions accepted by the court was a charge [4] that the jury must find that the defendants committed the offense in the Southern District of Texas to return a verdict of guilty. Also included among the accepted instructions was an instruction [5] that defendants must be found innocent if the jury believed defendants were not involved in the conspiracy until after the narcotics were imported into the United States.

The crux of appellants' argument is that they were misled into believing these instructions would be given, and they therefore informed the jury during closing argument that venue and the existence of a single conspiracy were necessary elements of the offense to be proved by the prosecution. Appellants claim that when the trial judge allegedly omitted the instructions their credibility was destroyed in the eyes of the jurors.

We find this argument lacking in two respects. First, an examination of the entire instruction given by the district court reveals that the jury was adequately instructed on the issues of venue and multiple conspiracies. Although the instruction did not use the exact language requested by appellants, the district judge made it clear that appellants were charged with causing named per-

4. The full text of the requested venue instruction was as follows:

"The Indictment charges that a conspiracy and two other offenses were committed in the Southern District of Texas, but the evidence does not reflect that any of the Defendants on trial here were ever in the Southern District of Texas at any time which is material to this case. I (will instruct) (have instructed) you that there are legal circumstances under which a person may be held responsible for the acts of others even though that person was not physically present. You are instructed, however, that if any or all of these Defendants are not, in your judgment, shown beyond a reasonable doubt to be responsible for an offense committed within the Southern District of Texas, you will find that Defendant or those Defendants not guilty."

5. The single conspiracy instruction requested by appellants reads as follows:

"The Government has charged that there is a single conspiracy involving the importation of cocaine at Laredo and its ultimate delivery in California. In addition, the Government has charged that the California Defendants are, in effect, responsible for smuggling and transporting that cocaine, knowing that it was illegally imported. You are instructed that unless you believe beyond a reasonable doubt that these Defendants, or any of them, agreed to import cocaine (so far as Count One

of the Indictment is concerned) or aided, counseled, commanded, directed, or procured that it be smuggled into the United States of America or transported or facilitated its transportation knowing that it had been smuggled into the United States, before this was done, if it was, you must find that Defendant or those Defendants not guilty.

"If there is more than one conspiracy or agreement, that is, if you believe that other people whose names have been mentioned during this trial, some of whom have testified as witnesses, agreed among themselves to bring this cocaine into the United States of America and transport it to Robert Frank Saenz in California, and if you further believe or have a reasonable doubt that Robert Frank Saenz then arranged or tried to arrange to sell or deliver to one or more of these Defendants that cocaine, you will find those Defendants not guilty.

"Even if you believe beyond a reasonable doubt that the Defendants on trial here today agreed and conspired with each other to buy, use, or sell this cocaine, you will find them not guilty unless you are further persuaded beyond a reasonable doubt that they were responsible for its importation in some manner as I have described responsibility and knew that it was illegally imported, if you find that the substance given to them under the supervision of Government agents was actually a prohibited substance imported in violation of law."

sons to bring narcotics across the border at Laredo, Texas. The failure to repeat the precise words requested by appellants is not reversible error. See Sugarman v. United States, 1919, 249 U.S. 182, 39 S.Ct 191, 63 L.Ed. 550; United States v. Blane, 6 Cir. 1967, 375 F.2d 249; Estes v. United States, 5 Cir. 1964, 335 F.2d 609.

■ Secondly, a trial judge's failure to inform counsel of an instruction which is subsequently given to the jury, or omitted from their consideration, does not require that the conviction be reversed in every case. Rather, the test is whether the instruction, considered as a whole, was fundamentally prejudicial to the rights of the defendant. Compare United States v. Hartman, 3 Cir. 1969, 409 F.2d 198, with Loveless v. United States, 1958, 104 U.S.App.D.C. 157, 260 F.2d 487. We find nothing in either the substance or the overall effect of this jury instruction which could have prejudiced appellants. The instruction adequately covered all elements of the offense, and defense counsel was not in any way restricted in making his closing argument to the jury. United States v. Hartman, supra.

### IV.

The final contention raised by appellants concerns the warrantless search of appellant Scheffer's home. As a result of this search the government was able to introduce the following evidence at the trial: two photographs showing the opened packages of substitute cocaine, a spoon and a knife all lying on Scheffer's living room table; and the testimony that fluorescent dust was found on Scheffer and Collins, indicating that they had either sampled or used the treated cocaine.

■ It is, of course, an elementary constitutional principle that police officers must go before a neutral government official and obtain a search warrant before intruding into a private dwelling. This requirement attaches even though the facts within the knowledge of the police officers would have authorized the issuance of a warrant.

"The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent."

Johnson v. United States, 1948, 333 U.S. 10 at 13–14, 68 S.Ct. 367 at 369, 92 L. Ed. 436; accord Chimel v. California, 1969, 395 U.S. 752, 89 S.Ct. 2034, 23 L. Ed.2d 685; Katz v. United States, 1967, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576; Camara v. Municipal Court, 1967, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930; Schmerber v. California, 1966, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908. If evidence obtained from a warrantless search is proffered at trial, the burden is on the prosecution to come within some exception to the warrant requirement. United States v. Jeffers, 1951, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59; United States v. Edwards, 5 Cir. 1971,

441 F.2d 749; Williams v. United States, 5 Cir. 1967, 382 F.2d 48; see Johnson v. United States, supra. In the case at hand, we have carefully reviewed the record and there is simply no plausible explanation as to why customs officials failed to go before a magistrate and obtain a search warrant. The government does state in its brief that the circumstances surrounding the raid on the Scheffer house were such that there was not enough time to secure a search warrant. This statement seems incredible, however, in view of the fact that customs agents, acting through the cooperating smugglers, actually planned the cocaine transfer and could have controlled the time at which it took place. Slight delay or the inconvenience of presenting facts to a magistrate are not sufficient circumstances to by-pass the warrant requirement. Johnson v. United States, supra.

■ We also reject the government's contention that the evidence obtained from Scheffer's house was harmless and merely cumulative of the testimony of Robert Saenz. As the district judge instructed the jury, the testimony of Saenz was essential to the case against appellants. The pictures of the opened packages of substitute cocaine and the evidence of fluorescent dust on the noses of Collins and Scheffer would certainly indicate to the jury that these two appellants were attempting to test the cocaine to determine its quality, and that Saenz was telling the truth about the involvement of appellants in the smuggling operation. In short, about the only independent evidence which confirmed Saenz' testimony was the evidence that the occupants of Scheffer's house had sampled the narcotic substance immediately upon its arrival. We cannot say that this evidence had little or no effect on the jury's decision as to whether or not to believe Saenz. See United States v. Williamson, 5 Cir. 1971, 450 F.2d 585; Rule 52(a), Federal Rules of Criminal Procedure, Title 18, U.S.C.

■ Having determined that an illegal warrantless search took place, we must now consider whether each appellant has standing to object to the introduction of the tainted evidence. Clearly, and undisputed by the government, Scheffer may contest the legality of the search since he was a resident and an occupant of the searched house. We also hold, on the strength of Jones v. United States, supra, that Collins has standing for the reason that he was a guest and a lawful occupant in Scheffer's house. See Katz v. United States, supra.

■ On the other hand, Stecher was not present in the house and his conviction was not based on possession of narcotics. Stecher lacks standing to object to the search of the house for the same reasons that he, and the other two appellants, could not object to the introduction of narcotics seized from the Volkswagen van. See Part I of this opinion, supra; Jones v. United States, supra; Alderman v. United States, supra.

In conclusion, then, we hold that Collins and Scheffer were convicted with evidence seized in violation of their Fourth Amendment rights and their judgments of conviction are hereby reversed and their cases remanded for a new trial. Stecher's Fourth Amendment rights were not abridged and he is not entitled to reversal on any of the other issues raised on this appeal. The conviction of Stecher is therefore affirmed.

Reversed and remanded as to Collins and Scheffer; affirmed as to Stecher.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

**PER CURIAM:**

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.