**James Gilbert WARE, Petitioner-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

**No. 15932.**

United States Court of Appeals Seventh Circuit.

May 1, 1967.

Schnackenberg, Circuit Judge, dissented.

Robert Force, Indianapolis, Ind., for appellant.

Richard P. Stein, U. S. Atty., James Manahan, Asst. U. S. Atty., Indianapolis, Ind., for appellee.

Before SCHNACKENBERG, FAIRCHILD and CUMMINGS, Circuit Judges.

FAIRCHILD, Circuit Judge.

Appeal from denial of motion to vacate sentence under 28 U.S.C.A. § 2255.

James Ware was convicted by a jury April 25, 1962. He filed his motion January 12, 1966. The problem arises from his apparent absence when the jury was brought back into court after submission of the case and certain testimony read and a fact stated in response to the jury's request.

The transcript covering the incident does not affirmatively show nor suggest whether Ware was present or absent. He claims he was in custody outside the courtroom. The district court, finding no other evidence on the point, "assumed" Ware was not present, was in a detention cell in the federal building or in the jail, and did not waive his right to be present. The court found, "There was no deliberate design to cause the defendant to be absent during the mentioned proceedings and his employed counsel was present." The district court reviewed the transcript and made findings that certain testimony was read, and that the answers given to the jury were in no way incorrect. The court concluded that although Ware's absence was "a procedural impropriety," no reasonable possibility of prejudice appears.

Ware contends that his fifth and sixth amendment rights have been infringed and that there is no room for judicial consideration whether there was a reasonable possibility of prejudice nor for application of the harmless error rule.

The proceeding in Ware's absence took place in open court. Both counsel were present. The transcript reveals that the jury had asked two written questions, conveyed to the judge by the bailiff. The judge had consulted with both counsel. The jury's two questions were: (1)

"Altes' testimony as to his answer as to why the name of White was used rather than Ware. May we rehear the above?" (2) "Was testimony given as to registered owner of car?"

The court responded to the first question by reading a short portion of Altes' testimony and, to the second question, by stating, with express approval of counsel, that there was no testimony as to the registered owner.

Understanding of the colloquy requires a little background: Ware, Altes, and Hilton were charged with interstate transportation of goods which they knew had been stolen. Altes and Hilton had pleaded guilty. At Ware's trial they testified concerning the theft and transportation and identified Ware as a participant. The three had stayed at a motel the night of the burglary. The registration card showed the names of Altes, Hilton and "J. White" and the license number of a Buick. Hilton testified he filled in the card, and that "J. White" was "an alias that I signed for James Ware." Altes testified to the same effect. When asked if he knew why Hilton used "White," defense counsel objected, and the objection was sustained.

Defense counsel, in argument, suggested to the jury that since Hilton signed his own and Altes' names, their companion was probably a real J. White whom Altes and Hilton were trying to protect at Ware's expense. He also argued that the government could easily have found out whether the license number shown on the card was issued to a J. White or a James Ware.

The Altes testimony read to the jury consisted of the questions and answers concerning the names put down by Hilton, including the question objected to, the objection, and the ruling.

We readily agree with the district court that although it ought to have obtained Ware's presence before the jury was brought in, there was no reasonable possibility that his interests were prejudiced by his absence. His trial counsel, though present, found no basis for objecting to what the court did, nor for asking that it do more. He made no objection to proceeding in Ware's absence. Ware's present counsel makes the unlikely suggestion that Ware might have been alert to the presence of the unsavory word "alias" in Altes' testimony and might have asked his trial counsel to object to the reading on that account. He has not pointed out anything else which could or should have been done differently, and we have found nothing.

The entire colloquy consumed seven minutes. The suggestion that Ware's presence before the jury might have tipped the scale toward acquittal, or that his absence raised questions in the minds of the jurors which inclined them toward conviction, or that he might have detected some inaccuracy in the reading of the testimony which escaped everyone else seems to us to be fancifully remote.

The question is whether this type of communication with the jury in the absence of defendant is, *per se*, an impairment of defendant's sixth amendment right to be confronted with the witnesses against him or a breach of due process of law under the fifth amendment, or an impairment of his right to trial by jury under Article III, sec. 2, and the sixth amendment, and whether there is room for judicial hindsight determination that the irregularity caused defendant no harm. Whether the communication was a violation of Rule 43 [1] and whether, if so, it may be disregarded under Rule 52 (a) as an irregularity which does not affect substantial rights seems to be very nearly the same question put in different terms.

It probably makes little difference whether the question be debated in terms of an impairment of constitutional rights and whether or not such impairment was harmless, or in terms of whether or not the irregularity had sufficient significance to have been an impairment of a constitutional right.

---

1. Requiring defendant's presence at every stage of the trial.

In any event, the Supreme Court has recently said:

"* * * We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not resulting in the automatic reversal of the conviction.

"* * * we hold * * * that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. * * *"[2]

Decisions in the sixth and third circuits approach, if they do not quite reach, the *per se* view of the particular problem of communication with the jury in the absence of the defendant. In United States v. Neal,[3] the judge sent an instruction to the jury, without the knowledge of defendant and perhaps without the knowledge of his counsel. On direct appeal the court determined this was error, and reversed.

In Evans v. United States,[4] the judge gave additional instructions in the absence of defendant, though his counsel was present. On direct appeal, the court held that defendant was deprived of a substantial right. The court did observe that the "instructions given did not relate to trivial, insubstantial matters, but involved vital issues in the case."

An argument for the *per se* approach is that it is absolute in thwarting any possible erosion of defendant's right to be present at all significant stages. It is our judgment, however, that a rule requiring close judicial scrutiny and the setting aside of the verdict unless the court believes beyond a reasonable doubt that the error was harmless will preserve the substance of the right. The *per se* rule, in our present case, would require the sacrifice of considerable time and effort because of an inadvertent omission.

The second circuit considered an informal conversation between judge and jury.[5] The court said:

"* * * As to the visit of the judge, it is true that courts are extremely jealous of anything of the kind, once the jury has been locked up; and we do not wish to abate that jealousy in the least; it is most undesirable that anything should reach a jury which does not do so in the court room. This is, indeed, too well settled for debate. * * * But, like other rules for the conduct of trials, it is not an end in itself; and while lapses should be closely scrutinized, when it appears with certainty that no harm has been done, it would be the merest pedantry to insist upon procedural regularity. * * *"

Recent cases in the fifth, eighth, and tenth circuits, and the District of Columbia, as well as this circuit, are consistent with the view that where the court believes beyond a reasonable doubt that the error was harmless, the error will not cause reversal.[6]

2. Chapman v. California, 386 U.S. 18, p. 22, 87 S.Ct. 824, p. 827, 17 L.Ed.2d 705 (Feb. 20, 1967).

3. (3d Cir. 1963), 320 F.2d 533.

4. (6th Cir. 1960), 284 F.2d 393.

5. United States v. Compagna (2d Cir. 1944), 146 F.2d 524, 528, cert. denied (1945), 324 U.S. 867, 65 S.Ct. 912, 89 L. Ed. 1422.

6. Estes v. United States (5th Cir. 1964), 335 F.2d 609, 618, cert. denied (1965), 379 U.S. 964, 85 S.Ct. 656, 13 L.Ed.2d 559; Rice v. United States (8th Cir. 1966), 356 F.2d 709 (here the court recognized that the presumption of prejudice

is rebuttable, but deemed it unrebutted); Jones v. United States (10th Cir. 1962), 299 F.2d 661; Walker v. United States (1963), 116 U.S.App.D.C. 221, 322 F.2d 434; United States v. Hoffa (7th Cir. 1966), 367 F.2d 698, *judgment vacated* 387 U.S. 231, 87 S.Ct. 1583, 18 L.Ed.2d 738. In several of these cases the court spoke in terms of whether there was a reasonable possibility of prejudice. The Supreme Court has pointed out that there is little if any difference between the reasonable possibility of prejudice formula and the standard of proof beyond a reasonable doubt of lack of prejudice. Chapman v. California, *supra* footnote 2.

We do not consider that the formula for determining harmless error must be different, where re-reading of testimony is involved, from that which applies to additional instructions. We are convinced beyond a reasonable doubt that the error complained of here was harmless.

The order appealed from is

Affirmed.

SCHNACKENBERG, Circuit Judge (dissenting).

I would hold that an accused's right to be present at every stage of the trial, when his substantial rights may be affected by the proceedings against him, is a constitutional right. Reliance cannot be placed on the harmless error rule to justify the deprivation of this constitutional right.

As early as 1884 the importance of this right was emphasized by the Supreme Court in Hopt v. People of Territory of Utah, 110 U.S. 574, at 579, 4 S.Ct. 202, at p. 204, 28 L.Ed. 262:

"* * * the legislature has deemed it essential to the protection of one whose life or liberty is involved in a prosecution for felony that he *shall* be personally present at the trial; that is, at every stage of the trial when his substantial rights *may* be affected by the proceedings against him. If he be deprived of his life or liberty without being so present, such deprivation would be without that due process of law required by the constitution." (Emphases supplied.)

See also, Lewis v. United States, 146 U.S. 370, 372, 13 S.Ct. 136, 36 L.Ed. 1011 (1892).

In the case at bar, after the jury had retired to deliberate, it had the bailiff deliver a slip of paper, containing two questions, to the judge. These questions were:

1. "Altes' testimony as to his answer as to why the name of White was used rather than Ware. May we rehear the above?"

2. "Was the testimony given as to registered owner of car?"

Thereafter, pursuant to an agreement between counsel for both sides and the court,[1] the judge had the jury brought back into the courtroom and, in the absence of defendant,[2] had the court reporter read "the answer" to the first of the above-quoted questions. After that was done, the judge verbally informed the jury that the answer to its second question was "no".

Although the judge,[3] after hearing the evidence pursuant to defendant-petitioner's motion to vacate sentence under 28 U.S.C. § 2255, set out in his Finding of Fact No. 4 what the court reporter at the trial purportedly had read back to the jury in answering its first question, this is merely a reference to the *original* testimony, which is found on page 59 of the trial transcript. There is, however, no record of what the court reporter actually had read back to the jury. Rather, the trial transcript, at page 232, merely states:

"(The Reporter read back the requested material.)"

Thus, without even reaching the propriety of the judge's answering the second question asked by the jury, I believe that the substantial rights of defendant may have been affected by the answering of the jury's first question. Actually, it was impossible for defendant (and, of course, the jury) to know whether or not the reporter read back the correct material, whether or not he correct-

1. The government in its brief intimates that, because of an agreement in the court's chambers, what occurred in defendant's absence was not a part of the trial. Obviously what occurs between defendant's indictment and his sentencing, and in the presence of the jury, is a part of the trial.

2. Defendant's counsel was present at this time.

3. This was the same judge who had presided at the trial of defendant.

ly read it back, and moreover whether the original reporting was accurate. Secondly, unlike the court in Estes v. United States, 5 Cir., 335 F.2d 609, 618 (1964), cert. denied, 379 U.S. 964, 85 S.Ct. 656, 13 L.Ed.2d 559, which was able to determine on the record therein that a rereading of an instruction of law was a correct statement of law, how are we able to review an incomplete record? Thirdly, unlike Snyder v. Com. of Massachusetts, 291 U.S. 97, 108, 54 S.Ct. 330, 78 L.Ed. 674 (1934), the rereading of certain portions of this trial testimony must have had some bearing on the jury's verdict, otherwise why would it specifically have requested this information? Fourthly, unlike those cases involving an instruction of law or a question on a point of law, a defendant if present can better contribute towards his defense on matters concerning trial testimony relevant to him. He is more likely to understand such material and be able to make suggestions to his attorney. Also, a defendant, under such circumstances, is entitled to be seen by the jury, and the jury, in turn, has a right to view his demeanor—especially where, as here, the jury has expressed a *particular* interest in a certain portion of the trial testimony relevant to defendant. Finally, in addition to the foregoing reasons, it is impossible to measure the psychological effect on the jury of defendant's absence at that time.

Those cases[4] where a defendant was not entitled to be present at some point during his trial involved situations where the communications between the judge and the jury were trivial or irrelevant or concerned solely a restatement of an instruction of law or a question on a point of law. Where, however, a defendant's "substantial rights may be affected" (Hopt v. People of Territory of Utah, supra) and "whenever his presence has

a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge" (Snyder v. Com. of Massachsuetts, supra, 291 U.S. at 105, 54 S.Ct. at 332), it is imperative that such a defendant be present.

I would reverse and remand for a new trial.

---

4. Snyder v. Com. of Massachusetts, supra; Johnson v. United States, 318 U.S. 189, 201, 63 S.Ct. 549, 87 L.Ed. 704 (1943); United States v. Compagna, 2 Cir., 146 F.2d 524, 528 (1944), cert. denied, 324 U.S. 867, 65 S.Ct. 913, 89 L.Ed. 1423; Jones v. United States, 10 Cir., 299 F.2d 661, 662 (1962), cert. denied, 371 U.S. 864, 83 S.Ct. 123, 9 L.Ed.2d 101; Walker v. United States, 116 U.S.App.D.C. 221, 322 F.2d 434, 437 (1963), cert. denied, 375 U.S. 976, 84 S.Ct. 494, 11 L.Ed.2d 421; Estes v. United States, supra; and United States v. Hoffa, 7 Cir., 367 F.2d 698, 713 (1966), record ordered for certiorari.