**UNITED STATES of America,
Appellee,**

v.

**John Theodore GLICK,
Appellant.**

**No. 838, Docket 35695.**

United States Court of Appeals,
Second Circuit.

Argued June 14, 1972.

Decided June 29, 1972.

William C. Cunningham, S. J., New York City, for appellant.

John T. Sullivan, Jr., Asst. U. S. Atty., Rochester, N. Y. (C. Donald O'Connor, Acting U. S. Atty., for the W. D. N. Y., of counsel), for appellee.

Before KAUFMAN, HAYS and OAKES, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

We are asked to reverse a conviction because the trial judge not once, but twice communicated with the jury out of the presence of the defendant (appearing *pro se*) during the course of the jury's deliberations.

John Theodore Glick, the appellant here, and seven other defendants [1] were tried before Judge Burke and a jury on six counts relating to the ransacking of

---

1. The other defendants were: Joe Thomas Gilchrist, Francis B. Callahan, Wayne M. Bonekemper, Suzanne Williams, Joan Nicholson, Martha Meyerding and Mary de Courcy Squire.

offices in the Federal Building in Rochester, New York, on September 6, 1970.[2] Only defendant Gilchrist was represented by counsel.

Since the evidence adduced at the trial is not pertinent to the question presented to us, we will proceed directly to the facts relevant to this appeal. The jury retired to commence its deliberations at 12:25 P.M. on Tuesday, December 1, 1970. (The trial began on November 16.) After their evening meal, the jurors delivered a note to a Deputy Marshal, who in turn handed it to the Deputy Clerk. Because Judge Burke was at home, the Deputy Clerk telephoned the judge and read the jury's question to him: "Must the prosecutor prove in each count that at least one defendant was in a particular office?" Instead of returning to the courthouse to answer the question in open court in the presence of the defendants as required by Rule 43 of the Federal Rules of Criminal Procedure,[3] Judge Burke over the telephone directed the Deputy Clerk to transmit the answer "Yes, except Count 6," to the jury through the Deputy Marshal.[4]

The district judge thereafter returned to his chambers in the courthouse, where he soon received a second note. To the best of Judge Burke's recollection, this note asked: "Can the jury in its verdict recommend leniency?"[5] The judge wrote his one-word answer on the back of the note: "Yes," and returned the note to the jury. None of the defendants nor Gilchrist's counsel was informed of either the first or second series of communications.

At 8:50 P.M. the jury returned its verdict. All eight defendants were found guilty on the six counts, but a recommendation of leniency was included in each of the forty-eight findings. Although we cannot fix the precise time of the questioned communications, it appears that the verdict followed hard on the heels of Judge Burke's instruction that the jury could recommend leniency.[6]

Judge Burke dispensed with a pre-sentence report,[7] setting December 3, two

2. The six counts charged respectively interfering with the administration of the Selective Service Act (50 U.S.C.App. § 462(a)), injuring property in the office of the Federal Bureau of Investigation (18 U.S.C. § 1361), injuring property in the Selective Service System office (18 U.S.C. § 1361), removing records from the Selective Service System office (18 U.S.C. § 2071(a)), removing records from the United States Attorney's office (18 U.S.C. § 2071(a)), and entering the Federal Building with intent to commit a crime (18 U.S.C. § 13).

3. Rule 43 provides in part.
 The defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by these rules.

4. Count 6 charged entering the Federal Building with intent to commit a crime in violation of 18 U.S.C. § 13. The record does not reveal what was troubling the jury or what effect Judge Burke's answer might have had.

5. The first note is still intact. The second note, however, which had been sent back into the jury room, has been lost. When Judge Burke was required by order of this court to state for the record the substance of the communications and the procedures followed by him on the evening of December 1, see infra, he recorded his memory as to the second question and answer. The parties stipulated that Judge Burke's recollection of the facts is correct.

6. We draw this inference from the fact that the two notes were sent out of the jury room after the jurors had returned to the courthouse from their dinner. Also, the second note was not delivered to Judge Burke until after he had returned to the courthouse. Accordingly, it is highly unlikely that much time elapsed between the time this note was answered and the jury returned its verdict at 8:50 P.M.

7. In sentencing the defendants, Judge Burke relied on "substantial information" provided by the United States Attorney and the FBI "in the nature of a pre-sentence investigation and report." This information never was disclosed to the defendants, and Glick assigns this procedure as error. In view of our decision

days after the verdict, as the day for sentencing and pre-trial motions. On the morning of the sentencing, however, the judge was presented with an article which appeared in the Rochester Democrat and Chronicle headlined "One Simple 'Yes' Unlocks a Hung Jury." Written by a reporter named Mark Starr and based upon interviews with jurors, the article revealed that three jurors had changed their votes of "not guilty" to "guilty" after they had been informed by the judge that the jury could recommend leniency. This article disclosed to the defendants and counsel for the first time that the judge and jury had communicated with each other after deliberations had commenced. It was not surprising, therefore, that when court convened that morning, counsel for Gilchrist asked the judge to place all of the communications on the record and at the same time to grant a new trial. Judge Burke denied both motions and proceeded to sentence all the defendants.[8]

A notice of appeal was filed on behalf of Glick, who eventually retained counsel. Thereafter, upon motion of Glick's counsel, this Court remanded the case to Judge Burke with instructions to place the communications on the record to consider a motion for a new trial, and to

issue findings of fact and conclusions of law. After recording his recollections, which the parties stipulated were correct, Judge Burke filed a terse memorandum and order dated January 31, 1972, denying a new trial.[9]

Glick now presses his appeal from the conviction and the order denying him a new trial. Since we disagree with Judge Burke's conclusion that Glick's rights "were not prejudiced by the communications," we reverse.

I.

■■ It is clear to us at the outset that the private communications between the judge and jury violated the unequivocal mandate of Rule 43, which requires the defendant to be present "at every stage of the trial."[10] *See, e. g.,* United States v. Schor, 418 F.2d 26, 29–30 (2d Cir. 1969); *see also* Shields v. United States, 273 U.S. 583, 47 S.Ct. 478, 71 L.Ed. 787 (1927); ABA Project on Minimum Standards for Criminal Justice, Trial by Jury § 5.3 and Commentary at 139–45 (Approved Draft, 1968). Although we recognize that in appropriate circumstances application of the harmless error rule may not require reversal,[11] we are convinced that the

to grant a new trial, we need not decide the propriety of Judge Burke's reliance on information from these sources without disclosure to the defendants.

8. Glick was sentenced to eighteen months on each of Counts 1–5 and six to eighteen months on Count 6, all terms to run concurrently.

9. Judge Burke's findings were:
 1. I hereby find the facts as specifically set forth in the statement of the trial judge dated January 19, 1972 and as stipulated by the parties in a stipulation approved by this court on January 20, 1972.
 2. I hereby further find that the rights of the defendant were not prejudiced by the communications between the judge and the jury as set forth in the statement of the trial judge dated January 19, 1972.

10. There is no question of waiver here. Judge Burke, in placing the communica-

tions on the record, stated that the communications "were not with the knowledge nor with the consent of Appellant Glick."

11. Rule 52(a), F.R.Crim.P.; *see, e. g.,* United States v. Arriagada, 451 F.2d 487 (4th Cir. 1971); United States v. Howard, 433 F.2d 1 (5th Cir. 1970), cert. denied, 401 U.S. 918, 91 S.Ct. 900, 27 L.Ed.2d 819 (1971); United States v. Schor, *supra;* Ware v. United States, 376 F.2d 717 (7th Cir. 1967); United States v. Hoffa, 367 F.2d 698, 713 (7th Cir. 1966), vacated on other grounds, 387 U.S. 231, 87 S.Ct. 1583, 18 L.Ed.2d 738 (1967); Rice v. United States, 356 F.2d 709 (8th Cir. 1966); Walker v. United States, 116 U.S.App.D.C. 221, 322 F.2d 434 (1963), cert. denied, 375 U.S. 976, 84 S.Ct. 494, 11 L.Ed.2d 421 (1964); cf. United States v. Compagna, 146 F.2d 524, 528 (2d Cir. 1944) (L. Hand, J.), cert. denied, 324 U.S. 867, 65 S.Ct. 912, 89 L.Ed. 1422 (1945): ". . . when

judge's bare assertion that the jury could recommend leniency, omitting any limiting or restricting admonitions and given in Glick's absence, was highly prejudicial.[12]

 We emphasize at this point, however, that we are not concerned merely with instructions delivered out of the presence of the defendant. The prejudice was compounded here because the volatile instructions on leniency were erroneous. In United States v. Louie Gim Hall, 245 F.2d 338 (2d Cir. 1957), we reversed a conviction where the trial judge, after an inquiry by the jury whether it had the right to recommend leniency, instructed the deadlocked jury that he would be "glad to have that recommendation and you may be sure that it will be acted upon accordingly." Our holding was no more than an application of the familiar rule that a verdict of guilty cannot stand if it has been induced by any intimation from the trial judge that a light sentence might be imposed, thus encouraging a juror to abandon his vote of not guilty. See, e. g., Demetree v. United States, 207 F.2d 892 (5th Cir. 1953) (jury told that the maximum sentence would not be imposed); Lovely v. United States, 169 F.2d 386 (4th Cir. 1948) (jury told that defendant would be eligible for parole after a specified period). In dictum, however, we noted that it would not have been error if the judge merely had instructed the jury that it could recommend leniency and had added that the function of sentencing belonged solely to the judge, that the judge would not be bound by any recommendation from the jury, and that the jury should not concern itself with the question of punishment in arriving at a verdict. But cf. United States v. Davidson, 367 F.2d 60 (6th Cir. 1966).

But Judge Burke's over-simplistic "yes" response to the jury's inherently dangerous inquiry opened the way to "unlock" the jury. The response ignored all of the admonitions we considered appropriate in Louie Gim Hall. In short, there was a total failure to make clear to the jury that its function was to decide guilt or innocence and that sentencing was the judge's province and his alone. See 2 Wright, Federal Practice and Procedure, Criminal § 512, at 366–67 (1969). Accordingly, under the circumstances present here, the likelihood existed that "one or more jurors entertaining doubts as to appellants' guilt agreed to vote for conviction because [they believed] they had it in their power to soothe their consciences by causing little or no punishment to be imposed." United States v. Louie Gim Hall, supra, 245 F.2d at 341.

## II.

Nor can we say that Judge Burke's instructions "did not affect the verdict." United States v. Schor, supra, 418 F.2d at 30. Wholly apart from the truthfulness of the newspaper report, we are convinced that the verdict was induced at least in part by Judge Burke's answer.[13] The jury, which had deliber-

it appears with certainty that no harm has been done, it would be the merest pedantry to insist upon procedural regularity."

12. As in United States v. Schor, supra, 418 F.2d at 30, we need not decide whether the proper standard with respect to harmless error is that of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (harmless beyond a reasonable doubt), or that of Kotteakos v. United States, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) (fair assurance that the verdict was not affected). Under either standard reversal would be required here. We note, how-

ever, that at least two circuits have explicitly adopted the Chapman standard. United States v. Arriagada, 451 F.2d 489 (4th Cir. 1971); Ware v. United States, 376 F.2d 717 (7th Cir. 1967). The eighth circuit in a pre-Chapman opinion held that a violation of Rule 43 creates a presumption of prejudice that may be rebutted "by evidence giving a clear indication of lack of prejudice." Rice v. United States, 356 F.2d 709, 716–717 (8th Cir. 1966).

13. Glick in his appeal has not focused on the first series of notes. In view of our conclusion, there is no need for us to consider them.

ated for approximately eight hours without reaching a verdict, was able to return a verdict soon after being told unconditionally and unequivocally that it could recommend leniency. Moreover, we have a clear indication that the judge's single-word response made an impact on the jury, for its verdict in fact included the recommendation of leniency on each of the forty-eight findings of guilt. This is not a case, therefore, where supplemental instructions on an issue of law delivered out of the presence of the defendant could be considered harmless because they merely repeated instructions previously given in his presence, United States v. Arriagada, 451 F.2d 487 (4th Cir. 1971), or because the jury had reached a verdict on one count before supplemental instructions were requested and delivered on subsequent counts and the defendant was given concurrent sentences on all counts. United States v. Howard, 433 F.2d 1 (5th Cir. 1970), cert. denied, 401 U.S. 918, 91 S.Ct. 900, 27 L.Ed.2d 819 (1971).

Accordingly, the judgment of conviction is reversed.