**Michael J. HENDERSON,**
**Petitioner-Appellant,**

v.

**Michael P. LANE, Warden, Menard**
**Correctional Center,**
**Respondent-Appellee.**

**No. 79–1343.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 21, 1979.
Decided Jan. 21, 1980.

---

Randy K. Johnson, Asst. State App. De-fender, Chicago, Ill., for petitioner-appel-lant.

Mark L. Rotert, Asst. Atty. Gen., Chica-go, Ill., for respondent-appellee.

Before CUMMINGS, PELL and TONE, Circuit Judges.

PELL, Circuit Judge.

In May 1974, the petitioner, Michael J. Henderson, was adjudged guilty of murder by an Illinois court. In 1978, Henderson filed a petition in the federal district court for relief from this judgment under 28 U.S.C. § 2254 alleging that certain proce-dures at his jury trial violated the Sixth and Fourteenth Amendments. The district court denied the relief sought, and Hender-son appeals from that judgment.

The facts are simple and essentially un-contested. The defendant was tried before a jury of twelve regular and two alternate members. At the conclusion of the jury instructions,[1] the two alternate jurors were discharged, and the other jurors retired for deliberations. After two and one-half hours of deliberations, one of the jurors suffered a heart attack and was taken to the hospital. After stopping deliberations, the trial court recalled the two alternate jurors and counsel for the State and the defendant Henderson. The court ques-tioned the alternate jurors about their ac-tivities since discharge. The first alternate juror admitted discussing the facts of the case with his wife, but added that she ex-pressed no opinion. Both alternate jurors assured the court of having reached no con-clusion about the defendant's guilt. The trial court then conferred with counsel out-side the presence of the jurors about possi-ble courses of action. The defendant's at-torney refused to stipulate to an eleven-member jury, but did say:

> If Mr. Pickett [the ailing juror] is deemed unavailable and could not continue, the only alternative would be the choosing of the alternate jurors in the order in which they are serving.

> \*     \*     \*     \*     \*     \*

> I don't know that I have to enter a stipu-lation to the twelve. It is the Court ruling, and that is why we have the alter-nate.

The trial court decided to recall the first alternate juror, although Henderson's attor-

---

1. At oral argument the petitioner suggested that the record does not show whether the alternate jurors were instructed on the law. We cannot agree with this characterization of the record. The state court transcript contains a reference by the trial judge indicating that the alternates were not discharged until the case was finally submitted to the jury. Further-more, we think there is little doubt that there would have been some form of objection by the petitioner's attorney had the trial court actually submitted the case to a juror who had not been instructed on the law, a highly irregular proce-dure.

ney said, "It is certainly not by stipulation of counsel." The alternate was reinstated as a member of the jury, and a guilty verdict was returned five hours later. Henderson was not personally present when the substitution was made.

After the verdict was returned, Henderson moved for a new trial, charging that the reinstatement of the alternate juror was erroneous. This motion was unsuccessful. Henderson made the same argument in the Illinois Appellate Court. According to Henderson, Ill.Rev.Stat. ch. 38, § 115–4(g)[2] forbade reinstatement of alternate jurors after deliberations began. The appellate court did not reach the merits of this argument, determining that the acquiescence of counsel in the procedure was sufficient in the absence of prejudice to bind Henderson and to constitute a waiver of any statutory rights. *People v. Henderson*, 45 Ill.App.3d 798, 4 Ill.Dec. 76, 359 N.E.2d 909 (1977).[3] The Illinois Supreme Court denied Henderson's petition for leave to appeal.

According to the petitioner, the substitution was a denial of his right to a trial by jury under the Sixth and Fourteenth Amendments. Without his presence in open court, the petitioner argues that a proper waiver of his right to jury trial was impossible. Alternatively, the petitioner argues that the substitution proceedings were at a critical stage of his trial and that his presence was constitutionally required.

We turn first to the petitioner's nonwaiver theory, considering the preliminary issue whether the substitution of the alternate juror after deliberations began contravened the Sixth and Fourteenth Amendments.

In determining the constitutionality of the substitution procedure, we must consider whether the procedure preserves the "essential feature" of the jury, defined by the Supreme Court as

> the interposition between the accused and his accuser of the commonsense judgment of a group of laymen, and in the community participation and shared responsibility that results from that group's determination of guilt or innocence.

*Williams v. Florida*, 399 U.S. 78, 100, 90 S.Ct. 1893, 1906, 26 L.Ed.2d 446 (1970).

From the district court's opinion it is evident that the petitioner relied heavily for his challenge on federal decisions under Fed.R.Crim.P. 24(c).[4] *See United States v. Lamb*, 529 F.2d 1153 (9th Cir. 1975) (en banc); *United States v. Allison*, 481 F.2d 468 (5th Cir. 1973), *cert. denied*, 416 U.S. 982, 94 S.Ct. 2383, 40 L.Ed.2d 759; *United States v. Beasley*, 464 F.2d 468 (10th Cir. 1972); *United States v. Hayutin*, 398 F.2d 944 (2d Cir. 1968), *cert. denied*, 393 U.S. 961, 89 S.Ct. 400, 21 L.Ed.2d 374; *United States v. Virginia Erection Corp.*, 335 F.2d 868 (4th Cir. 1964). Of the Rule 24(c) decisions, *United States v. Lamb* is probably the closest factually to the case at hand.[5] In *Lamb*

2. The section at issue is part of the Illinois Code of Criminal Procedure and provides:

> After the jury is impaneled and sworn the court may direct the selection of 2 alternate jurors who shall take the same oath as the regular jurors. Each party shall have one additional peremptory challenge for each alternate juror. If before the final submission of a cause a member of the jury dies or is discharged he shall be replaced by an alternate juror in the order of selection.

3. One appellate court judge dissented, suggesting that the court should have reviewed the case despite the waiver. According to the dissent, the procedure violated § 115–4(g), and prejudice should be presumed, on the basis of *United States v. Lamb*, 529 F.2d 1153 (9th Cir. 1975) (en banc).

4. Rule 24(c) provides in pertinent part:

> The court may direct that not more than 6 jurors in addition to the regular jury be called and impanelled to sit as alternate jurors. Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties. . . . An alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict. . . .

5. We do not consider cases such as *Virginia Erection, Hayutin,* and *Beasley, supra,* applicable because they concern the presence of alternate jurors, not entitled to vote on guilt, during deliberations of the twelve regular jurors. The principal reason for finding a violation of Rule 24(c) in these cases is the danger that the alternates have participated in the determina-

an alternate juror who was previously discharged was substituted for a juror who became incapable of continuing deliberations, and the court held this procedure reversible error under Fed.R.Crim.P. 24(c). Although *Lamb* did not expressly reach the issue, the opinion implied that the substitution procedure might raise constitutional problems by "significantly limit[ing] the accused's right to a mistrial if the original jury cannot reach agreement." 529 F.2d at 1156. In *Lamb* the forced unanimity resulting from the substitution was apparent.[6] Coercion to vote with the majority to reach a verdict may well force a juror to feign illness to avoid the burden of making a choice. *See* 529 F.2d at 1156. In this way, substitution undermines the unanimity requirement of Fed.R.Crim.P. 23(b). The Supreme Court, however, has held that in state prosecutions nonunanimous verdicts, a procedure that impinges even more directly than this substitution procedure on the "mistrial right" are constitutionally permissible. *Apodaca v. Oregon*, 406 U.S. 404, 411, 92 S.Ct. 1628, 1633, 32 L.Ed.2d 184 (1972) (opinion of White, J.) ("Requiring unanimity would obviously produce hung juries in some situations where nonunanimous juries will convict or acquit. But in either case, the interest of the defendant in having the judgment of his peers interposed . . . is equally well served.")

The other facet of the petitioner's first challenge to the substitution compares the use of the dismissed alternate to the use of a complete stranger to the proceedings in determining guilt. The petitioner's analogy exaggerates the effect of the brief separation on the alternate's abilities as a juror. The petitioner has not shown any irregularities in the initial selection of the alternate juror; the alternates were subject to the same selection procedures as the regular jurors. The petitioner does not dispute that because of these procedures the trial court generally may substitute an alternate for a regular juror should cause arise during trial, without first consulting the defendant or his counsel. *See United States v. Garafolo*, 385 F.2d 200 (7th Cir. 1967), *vacated on other grounds*, 390 U.S. 144, 88 S.Ct. 841, 19 L.Ed.2d 970 (1968); *United States v. Houlihan*, 332 F.2d 8 (2d Cir. 1964), *cert. denied*, 379 U.S. 828, 85 S.Ct. 56, 13 L.Ed.2d 37.[7] The petitioner's constitutional argument is thus narrowed in its focus to the reinstatement procedures. The alternate jurors heard the evidence and were instructed on the law with the regular jurors. The petitioner's defense attorney was present during the reinstatement proceedings and was permitted to examine the alternate juror about his activities after dismissal and the

---

tion of guilt, thus running afoul of Fed.R. Crim.P. 23(b), which limits federal juries to twelve members. In fact, the premise of both *Hayutin* and *Virginia Erection* was a Sixth Amendment limitation on jury size. *See Hayutin*, 398 F.2d at 950; *Virginia Erection*, 335 F.2d at 870. In *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), however, the Supreme Court has since held that the jury trial right of the Sixth and Fourteenth Amendments does not fix jury size at twelve in a state criminal trial. Thus, even if the factual setting of *Virginia Erection* and *Hayutin* were analogous to the case at hand, the constitutional premise of the decisions no longer is.

**6.** In *Lamb* an alternate juror was sent home when deliberations began but was asked to "stand by" should her services be needed. The regular jurors reached a verdict of guilty after four hours of deliberations spread over two days. The judge did not accept the verdict, however, because it was inconsistent with the instructions. Earlier that same day, one juror had sent a note asking to be excused because

of emotional distress over the death of a coworker. The judge immediately called back the alternate juror, but then told her not to return, believing the jury had reached a verdict. When the verdict proved unsatisfactory, the court called back the alternate, and dismissed the regular juror. Only twenty-nine minutes after retiring for deliberations with the new juror, the jury returned a guilty verdict.

**7.** The petitioner has argued that this procedure impinges on his right to have his trial completed by a particular tribunal, citing *Wade v. Hunter*, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949). We do not see how the replacement of an extremely ill juror with an alternate in this case infringes on this right any more than it did in *Garafolo, supra*, where substitution occurred during the trial. Indeed, it is more likely that the use of an alternate juror preserves this right, no matter when the substitution occurs. *See* 2 C. Wright, Federal Practice & Procedure § 388 (1969).

possibility that the juror had formed opinions about guilt or innocence during that time. It was only after the juror's assurance that he was still able to perform his duties properly and the defense counsel's statement that he saw no alternatives that the trial court reinstated the juror.

In summary, the Illinois Appellate Court already has examined the substitution under Illinois law in the light of the dangers suggested in the federal case law and has upheld the conviction. Although perhaps no procedure will be perfect for dealing with these difficult and unforeseeable circumstances, our review is restricted to the narrower range of constitutional errors. The juror was reinstated in the presence of the petitioner's attorney only after reaffirming his ability to make a fair decision in the case. Because the essential feature of the jury was preserved, the defendant's Sixth Amendment challenge to the substitution procedure must fail.

We now turn to the petitioner's argument that he had a right to be present at the time of the substitution. Citing *Patton v. United States*, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930), the petitioner argues that his attorney's consent was insufficient to ratify the substitution, because waiver of jury trial rights requires "the express and intelligent consent of the defendant." 281 U.S. at 312, 50 S.Ct. at 263. Because we have held that the substitution did not deprive the petitioner of a constitutional jury, the waiver procedures prescribed in *Patton* are not applicable.

We therefore reach the petitioner's final argument that the reinstatement was at a critical stage in the trial, giving the petitioner a right to be present under the Fourteenth Amendment. *See Snyder v. Massachusetts*, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934). We agree with the petitioner that the court should have obtained his presence before substituting the alternate juror at so late a stage in the proceedings. *See Hopt v. Utah*, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884); *Ware v. United States*, 376 F.2d 717 (7th Cir. 1967); *United States v. Arriagada*, 451 F.2d 487

(4th Cir. 1971), *cert. denied*, 405 U.S. 1018, 92 S.Ct. 1300, 31 L.Ed.2d 481. Nevertheless, when the constitutional error is harmless beyond a reasonable doubt, the conviction must stand. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Ware v. United States, supra.*

Unlike many of the proceedings subject to constitutional scrutiny because of the defendant's absence, the proceedings at issue here were transcribed, giving this court a precise record from which to determine prejudice. The most obvious barrier to prejudice in this case was the presence of the petitioner's attorney. The petitioner's attorney questioned the alternate jurors and rejected any alternative procedures. Because of the attorney's presence, the petitioner's interests were properly represented. *See Ware*, 376 F.2d at 718–19; *United States v. Brown*, 571 F.2d 980, 987 (6th Cir. 1978) (in-chambers conference concerning the dismissal of a juror is not at a stage of a trial when defendant's absence would frustrate fairness of trial, if counsel is present). Furthermore, no legal error was committed in the petitioner's absence: the reinstatement was permissible under Illinois law and the record affirmatively shows that the juror had not yet formed an opinion on guilt or innocence. *Cf. United States v. Glick*, 463 F.2d 491, 494 (2d Cir. 1972) (prejudice of defendant's absence compounded because "volatile instructions on leniency were erroneous"). Finally, the petitioner had an opportunity at the original voir dire proceedings to observe the empanelling of the alternate jurors. The record affirmatively shows that the short discharge period resulted in no new cause for disqualifying the alternates as jurors. *See United States v. Arriagada*, 451 F.2d at 489 (error in reinstructing jury outside of the defendant's presence harmless beyond a reasonable doubt when the court's answer to the jury was in direct conformity with the court's prior instruction given in the presence of the defendant).

To set aside the conviction on the basis of this inadvertent error would result in a considerable sacrifice of judicial resources

with no corresponding increase in the actual fairness of the trial. *See Ware*, 376 F.2d at 719. "There is danger that the criminal law will be brought into contempt—that discredit will even touch the great immunities assured by the Fourteenth Amendment—if gossamer possibilities of prejudice to a defendant are to nullify a sentence pronounced by a court of competent jurisdiction in obedience to local law, and set the guilty free." *Snyder v. Massachusetts*, 291 U.S. 97, 122, 54 S.Ct. 330, 338, 78 L.Ed. 674 (1934).

Accordingly, the judgment of the district court is

Affirmed.