JOURNAL ENTRY AND OPINION
{¶ 1} Defendant Steve Nolan appeals from his conviction for attempted kidnapping. For the reasons set forth below, we affirm the finding of guilt, vacate the sentence and remand for resentencing.
 {¶ 2} On March 24, 2005, defendant was indicted for one count of attempted kidnapping. He pled not guilty and moved for a voir dire hearing of the identifying witnesses. The trial court held a hearing on this motion on July 14, 2005. Cleveland Police Lt. Gail Maxwell and Det. Michael Meyer testified that defendant was placed in a line-up with five other men of similar height, build, complexion and appearance. The complaining witness, sixteen year-old Stephanie Martin, then testified after the trial court adjourned the proceedings and reconvened in chambers and outside of the presence of defendant. Martin testified that she identified defendant from the line-up and that she thought he could see her so she fled the room crying. She also identified photographs of a vehicle owned by defendant. The trial court then granted defendant 30 days to review the transcript and determine whether he would file a motion to suppress the identification.
 {¶ 3} The matter proceeded to a jury trial on March 13, 2006. The state's evidence demonstrated that Martin, a student at Glenville High School, was waiting for a bus at the bus stop at Arbor Road and St. Clair Avenue at approximately 7:30 a.m., on March 11, 2005. A black Jeep Cherokee with tinted windows and white numbers and letters pulled into the parking lot behind the bus stop. *Page 5 
 {¶ 4} The driver asked Martin if he could talk to her and Martin said no. The man repeated the request and said that he could put money into her pocket and told her to get into the jeep. Martin again said no and the driver got out of the car and walked toward Martin. Martin ran and the man chased her and told her to get into the car. Martin ran to the left and the man ran in the same direction after her. Martin continued running and the man then returned to his car and left the scene. According to Martin, he was wearing a brown jacket, blue cap, blue jeans and blue Timberland boots.
 {¶ 5} Martin fled to her home and her mother called the police. Martin conveyed her description of the vehicle and the man to the police. The case received media attention and two days later, Det. Moore received an anonymous tip that the vehicle was on Columbia Road. Officer Jerry Tucker responded to the area and a male flagged him down and indicated that a suspicious car with white letters and numbers was in a nearby driveway. Tucker went to the house and spoke with defendant then arrested him. His car was towed and blankets and alcohol were removed from the passenger compartment.
 {¶ 6} Martin was shown pictures of defendant's car and identified them as the car driven by the man who chased her. Lt. Gail Maxwell selected five other men of similar height, weight and appearance to participate in a line up with defendant. Martin identified defendant and made a brief statement that indicated he was the man who had chased her. *Page 6 
 {¶ 7} Defendant elected to present evidence and offered the testimony of Lorenzo Willis. Willis stated that he was with defendant at a party for contractors which began on the night of March 10, 2005 and ended the next morning at 8:00 or 9:00 a.m. According to Willis, defendant was one of the last people to leave and he observed defendant cleaning snow off of his car right before he left.
 {¶ 8} Defendant was subsequently convicted of the offense and sentenced to four years of incarceration. He now appeals and assigns seven errors for our review.
 {¶ 9} Defendant's first assignment of error states:
 {¶ 10} "Defendant was denied due process of law when the court overruled his motions for judgment of acquittal."
 {¶ 11} Within this assignment of error, defendant asserts that there was insufficient evidence to establish the offense and, in particular, insufficient evidence of force.
 {¶ 12} "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v.Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus. See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19, 23, 514 N.E.2d 394.Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two *Page 7 
of the syllabus, in which the Ohio Supreme Court held:
 {¶ 13} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Citations omitted.)
 {¶ 14} In this matter, defendant was charged with attempted kidnapping. The attempt statute, R.C. 2923.02, provides as follows:
 {¶ 15} "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of the offense, shall engage in the conduct that, if successful, would constitute or result in the offense."
 {¶ 16} The offense of kidnapping is defined in R.C. 2905.01 as follows:
 {¶ 17} "No person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: * * * To facilitate the commission of any felony or flight thereafter * * *."
 {¶ 18} Force is defined in R.C. 2901.01(A)(1) as:
 {¶ 19} "Any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." *Page 8 
 {¶ 20} "Force may properly be defined as `effort' rather than `violence' in a charge to the jury." State v. Lane (1976),50 Ohio App.2d 41, 45, 361 N.E.2d 535.
 {¶ 21} In State v. Muniz, 162 Ohio App.3d 198, 2005-Ohio-3580,832 N.E.2d 1279, the court found sufficient evidence of force where:
 {¶ 22} "* * * Muniz hung out the window and attempted to grab the victim's arm. This act of physical exertion on the part of Muniz is an act of force and is sufficient to sustain a conviction for attempted abduction. In the second case, Muniz moved toward the 11-year-old and attempted to grab her twice. Both acts of physical exertion by Muniz are sufficient to sustain a conviction for attempted abduction."
 {¶ 23} In this matter, the evidence demonstrated that defendant asked if he could talk to Martin and Martin said no. The man repeated the request and said that he could put money into her pocket. He then told her to get into the jeep. Martin again said no and the driver got out of the car and walked toward Martin. Martin ran and the man ran after her and told her to get into the car. In short, he attempted to lure her into his car then chased her when she refused to comply. Construing this evidence most favorably to the state, to determine whether the jury in this instance could have found the essential elements of attempted kidnapping proven beyond a reasonable doubt, we conclude that the evidence manifests defendant's physical exertion at catching Martin and removing her from the place where she was found and manifests restraint of her freedom of movement and was sufficient to establish *Page 9 
the offense of attempted kidnapping. In accordance with all of the foregoing, this assignment of error is without merit.
 {¶ 24} Defendant's second assignment of error states:
 {¶ 25} "Defendant was denied due process of law when the court did not suppress evidence resulting from defendant's warrantless arrest and subsequent identification procedure."
 {¶ 26} R.C. 2935.04 authorizes any person may make a warrantless arrest when a felony has been committed or there is reasonable ground to believe a felony has been committed and when the person making the arrest has reasonable cause to believe the person arrested is guilty of the offense.
 {¶ 27} In Adams v. Williams (1972), 407 U.S. 143, 148, 92 S.Ct. 1921,1924, 32 L.Ed.2d 612, 618, the court explained the concept of probable cause:
 {¶ 28} "Probable cause to arrest depends `upon whether, at the moment the arrest was made . . . the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.' Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225,13 L.Ed.2d 142 [145] (1964)."
 {¶ 29} In this matter, the officers discovered a vehicle which matched the vehicle driven by the assailant, and defendant admitted that it was his. The record reveals a particularized and objective basis for suspecting defendant of criminal *Page 10 
activity and this evidence was therefore sufficient to establish probable cause under the statute. Cf. State v. Vance (May 11, 1987) Clark App. No. 2246; State v. Huston (Jan. 2, 1986), Lake App. No. 11-033.
 {¶ 30} As to the identification procedure, we note that when a witness has been confronted with a suspect before trial, due process requires a court to suppress an identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances. State v.Waddy (1992), 63 Ohio St.3d 424, 438, 588 N.E.2d 819, citing Manson v.Brathwaite (1977), 432 U.S. 98, 116, 97 S.Ct. 2243, 2254,53 L.Ed.2d 140, 155, and Neil v. Biggers (1972), 409 U.S. 188, 196-198,93 S.Ct. 375, 381-382, 34 L.Ed.2d 401, 410-411. However, no due process violation will be found where an identification is instead the result of observations at the time of the crime and does not stem from an impermissibly suggestive confrontation. Coleman v. Alabama (1970),399 U.S. 1, 5-6, 90 S.Ct. 1999, 2001, 26 L.Ed.2d 387, 394.
 {¶ 31} In this matter, there is nothing to indicate that the identification procedure was unnecessarily suggestive as five other individuals of similar height, weight, build, complexion and appearance were selected for participation in the line up. Moreover, Martin's reaction at the line up convinces us that her identification was the result of observations at the scene and not the result of an impermissibly suggestive confrontation.
 {¶ 32} Defendant's third assignment of error states: *Page 11 
 {¶ 33} "Defendant was denied his constitutional right to a public trial when the court conducted an examination of a witness in the court's chambers."
A. Public Trial
 {¶ 34} The violation of the right to a public trial is a structural error. It is not subjected to harmless-error analysis. Waller v.Georgia (1984), 467 U.S. 39, 49-50, 104 S.Ct. 2210, 81 L.Ed.2d 31.
 {¶ 35} However, the right to a public trial is not absolute, and in some instances must yield to other interests, such as those essential to the administration of justice. State v. Drummond, 111 Ohio St.3d 14,2006-Ohio-5084, 854 N.E.2d 1038. A trial judge has authority to exercise control over the proceedings. Id. In Waller, the court held that in order to justify closure of a hearing in a criminal case, "the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." 467 U.S. at 48, 104 S.Ct. 2210,81 L.Ed.2d 31.
 {¶ 36} The Waller Court held that a suppression hearing was improperly closed. The remedy, however, was not a new trial, but a new suppression hearing. Where, however, a new hearing will not materially change the position of the parties, there is no need for either a new hearing or a new trial. State v. Bethel, 110 Ohio St. 3d 416, 2006-Ohio-4853,854 N.E.2d 150, citing Waller, 467 U.S. at 49, *Page 12 104 S.Ct. 2210, 81 L.Ed.2d 31. In such instances, a new hearing would be an empty formality; a new trial would be a "windfall." Id.
 {¶ 37} Here, the prosecuting attorney requested closure of the voir dire hearing because Martin became frightened and fled the line up after observing defendant, who stopped and tried to look through the glass at the witness. The police officers testified in court and in the presence of defendant but the trial court adjourned the proceedings in order for Martin to testify in chambers and outside of the presence of defendant. The trial court held that the action was necessary "in order to accommodate the potential intimidation of the witness and the balance of the defendant's right to confrontation, which this is simply a hearing and not a trial." The trial court then instructed that defendant had 30 days in which to file a motion to suppress the identification but he did not do so. Moreover, later at trial, Martin did identify defendant in open court, with defendant present and she again testified to seeing defendant at the bus stop and to identifying him in the line up. We therefore find that the closure did not affect the fairness, integrity, or public reputation of the trial, Cf. State v. Cassano,96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, and there is therefore no reason to suspect that a new voir dire hearing would materially change the position of the parties. We find the foregoing sufficient to meet the guidelines set forth in Waller, supra.
B. Exclusion of Defendant {¶ 38} As to the exclusion of defendant, we note that a defendant "has a *Page 13 
fundamental right to be present at all critical stages of his criminal trial." State v. Hill (1995), 73 Ohio St.3d 433, 444, 653 N.E.2d 271,281. However, it is well established that a defendant's right to be present at trial is not absolute. State v. White, 82 Ohio St.3d 16,1998-Ohio-363, 693 N.E.2d 772. Prejudicial error exists only where "a fair and just hearing [is] thwarted by [defendant's] absence." Id., quoting Snyder v. Massachusetts (1934), 291 U.S. 97, 108, 54 S.Ct. 330,333, 78 L.Ed. 674, 679.
 {¶ 39} In State v. Howard (1978), 57 Ohio App.2d 1, 4-5,385 N.E.2d 308, 312-313, the court addressed the defendant's claim that the trial court committed prejudicial error by conducting an in camera hearing, from which defendant was excluded, in order to determine whether the witnesses' testimony would be admissible. The court found that the exclusion did not violate defendant's right to confrontation because defendant had "the opportunity to cross-examine, in open court, the witnesses who testified as to offenses committed by appellant against them, and the jury had the opportunity to observe their demeanor."
 {¶ 40} With regard to whether defendant's due process rights were violated by his exclusion from the hearing, the court applied the standard set forth in Snyder, supra, and determined that because the witnesses testified to "other acts which tended to show that he had done the act for which he was being tried," defendant's due process rights were violated.
 {¶ 41} We further note that in Kentucky v. Stincer (1987),482 U.S. 730, 746, 107 S.Ct. 2658, 96 L.Ed.2d 631, the court found no due process or Confrontation *Page 14 
Clause violation when an accused was excluded from a hearing on the competency of two child witnesses. The Court stated that where the hearing focuses upon substantive testimony of defendant's guilt, then the hearing bears a substantial relationship to the defendant's opportunity to defend and the court must balance the defendant's role in assisting in his defense against the risk of identifiable and substantial injury to the specific child witness.
 {¶ 42} Later, in Maryland v. Craig (1990), 497 U.S. 836, 862,110 S. Ct. 3157, 111 L.Ed.2d 666 the Court upheld the use of testimony via one-way closed circuit television where the procedure was required to protect the child from trauma due to testifying in presence of the accused. The Court held that face-to-face confrontation is not an absolute constitutional requirement; it may be abridged where there is a case-specific finding of necessity. The Court additionally explained:
 {¶ 43} "Indeed, where face-to-face confrontation causes significant emotional distress in a child witness, there is evidence that such confrontation would in fact disserve the Confrontation Clause's truth-seeking goal. See, e.g., Coy, supra, 487 U.S. at 1032 (BLACKMUN, J., dissenting) (face-to-face confrontation "may so overwhelm the child as to prevent the possibility of effective testimony, thereby undermining the truth-finding function of the trial itself"); Brief for American Psychological Association as Amicus Curiae 18-24; State v.Sheppard, 197 N.J. Super. 411, 416, 484 A.2d 1330, 1332 (1984)[.]"
 {¶ 44} Moreover, "The presence of [defendant's] attorneys has been held to *Page 15 
constitute a `most obvious barrier to prejudice' in such instances."State v. Cannon (Dec. 29, 1996), Summit App. Nos. 17549 17532, quotingState v. Williams (1983), 6 Ohio St.3d 281, 286, 452 N.E.2d 1323 andHenderson v. Lane (7th Cir. 1980), 613 F.2d 175, 179.
 {¶ 45} Applying the foregoing to this matter, we conclude substantive evidence of defendant's guilt was introduced in connection with the voir dire identification hearing. However, balancing defendant's role in assisting in his defense against the risk of identifiable and substantial injury to the specific child witness, we cannot say that the trial court committed prejudicial error. The record indicates that defendant did not promptly exit the line up but stayed behind and tried looking through the glass. Martin fled in tears because she feared he could see her. The police officers testified in court and in the presence of defendant but the trial court adjourned the proceedings in order for Martin to testify in chambers and outside of the presence of defendant. Further, Martin did identify defendant later in open court, with defendant present, and she again testified to seeing defendant at the bus stop and to identifying him in the line up. Accordingly, we find that the exclusion of defendant from a portion of the proceedings did not render them unfair or unjust. We therefore reject this assignment of error.
 {¶ 46} Defendant's fourth assignment of error states:
 {¶ 47} "Defendant was denied due process of law when the court gave an `on or about' instruction when the defendant presented alibi evidence." *Page 16 
 {¶ 48} In State v. Bell, Cuyahoga App. 87769, 2006-Ohio-6592, this court rejected this contention and stated:
 {¶ 49} "When instructing the jury, the trial court gave the following instruction:
 {¶ 50} `"The date that the offenses in this indictment allegedly occurred have been previously stated. It is not necessary that the State prove that the offenses were committed on the exact day as charged in the indictment. It is sufficient to prove that the offense took place on a date reasonably near the date claimed.'
 {¶ 51} "This instruction is also a standard instruction in Ohio. The jury heard evidence from the State with regard to when the offenses occurred. The jury also heard evidence from Bell about his alibi. Accordingly, the jury was free to weigh the evidence and this instruction did not result in any harm to Bell's case. The trial court did not err when it gave this instruction."
 {¶ 52} In accordance with the foregoing, we likewise reject this contention herein.
 {¶ 53} Defendant's fifth assignment of error states:
 {¶ 54} "Defendant was denied due process of law when the court failed to give an alibi instruction."
 {¶ 55} Defendant did not request an alibi instruction at trial, so we must review the court's failure to give an instruction for plain error.
 {¶ 56} In State v. McClain, Cuyahoga App. No. 77740, 2002-Ohio-2349, this court noted that it follows the "reasoning as set forth in[State v. Sims (1982), *Page 17 3 Ohio App.3d 331, 335, 445 N.E.2d 245 ] and has held that" where the record supports a finding of guilt beyond a reasonable doubt and appellant cannot show that the result would have been different had the jury been instructed on the defense of alibi, the failure to instruct is not reversible error. State v. Griffin, (Aug. 25, 1988), Cuyahoga App. No 54238; State v. Wylie (Oct. 25, 1984), Cuyahoga App. No. 48012,State v. Mitchell (1989), 60 Ohio App.3d 106, 108, 574 N.E.2d 573. InMitchell, as here, the defendant filed a notice of alibi and relied upon it for his defense. Moreover, Mitchell requested an alibi instruction and objected to its denial, unlike the circumstances in the matter sub judice. Even so, the Mitchell court found that it was not unreasonable for the jury to disbelieve the alibi and find the defendant guilty beyond a reasonable doubt and held "whether or not an alibi instruction is requested, the failure to give such an instruction is harmless error when the evidence clearly supports a guilty verdict beyond a reasonable doubt." Id. at 109."
 {¶ 57} In this matter, we find no plain error, as the evidence clearly supports a guilty verdict beyond a reasonable doubt since Martin separately identified defendant and his vehicle from the incident and it was not unreasonable for the jury to disbelieve the alibi provided by Willis.
 {¶ 58} Defendant's sixth assignment of error states:
 {¶ 59} "Defendant was denied effective assistance of counsel."
 {¶ 60} In order to demonstrate a claim of ineffective assistance of counsel, the defendant must show that his counsel deprived him of a fair trial. In particular, *Page 18 
appellant must show that: (1) defense counsel's performance at trial was seriously flawed and deficient; and (2) the result of the trial would have been different if defense counsel had provided proper representation at trial. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Brooks (1986),25 Ohio St.3d 144, 495 N.E.2d 407.
 {¶ 61} There is a presumption that a properly licensed attorney executes his or her duty in an ethical and competent manner. State v.Smith (1985), 17 Ohio St.3d 98, 477 N.E.2d 1128; Vaughn v. Maxwell
(1965), 2 Ohio St.2d 299, 209 N.E.2d 164. In addition, this court must accord deference to defense counsel's strategic choices during trial and cannot examine the strategic choices of counsel through hindsight.Strickland, supra at 689.
 {¶ 62} In this matter, defendant asserts that his trial counsel was ineffective for failing to file a motion to suppress the identification procedure, failing to file a motion to suppress based upon the unlawful arrest of defendant, failing to seek suppression of Martin's identification of the vehicle, and in failing to request an instruction as to alibi.
 {¶ 63} With regard to the claims that counsel was ineffective for failing to file a motion to suppress the identification procedure, and failing to file a motion to suppress based upon the unlawful arrest of defendant, we note that we have previously reviewed the underlying claims of error and rejected them. Accordingly, a claim of ineffective assistance of counsel based upon such claims must likewise fail. *Page 19 
See State v. Henderson (1989), 39 Ohio St.3d. 33, 528 N.E.2d 1237.
 {¶ 64} As to counsel's failure to seek suppression of Martin's identification of the vehicle, we note, after reviewing the entire record that there is no reasonable probability that the outcome of the trial would have been different had such a motion been filed. Therefore, defendant's claim of ineffective assistance of counsel in this regard must fail.
 {¶ 65} With regard to the third basis of ineffective assistance, we note that in State v. Elko, Cuyahoga App. No. 83641, 2004-Ohio-5209, this court concluded that counsel was not ineffective for failing to request such an instruction where the alibi was "weak at best."" Likewise, in this matter, the alibi was not strong as it was offered by Lorenzo Willis and the officers tried repeatedly to speak with Willis prior to trial but were unsuccessful.
 {¶ 66} Defendant's seventh assignment of error states:
 {¶ 67} "Defendant was denied his Sixth and Fourteenth Amendment rights when the court based its sentence on facts found by the court and not alleged in the indictment nor found by the jury."
 {¶ 68} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856,845 N.E.2d 470, the Supreme Court of Ohio applied the principles announced inBlakely v. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531,159 L.Ed.2d 403 to Ohio's felony sentencing statutes. The Court held that various statutes violate the constitutional right to a jury trial as they require judicial factfinding before imposition of sentence. *Page 20 
In particular, the Court held that R.C. 2929.14(B), which sets forth a presumptive minimum term in certain instances, which can be exceeded only following additional factfinding by the judge, does not comply withBlakely, as this procedure increases the total punishment based on findings beyond those determined by a jury or stipulated to by a defendant. The Court then severed this provision, along with others,[1] from the sentencing scheme and held that judicial factfinding is no longer required before the imposition of more than a minimum terms.
 {¶ 69} The Foster Court additionally held that where the defendant's sentence is based upon an unconstitutional statute and such case is pending on direct review, the sentence is deemed void and the ordinary course is to vacate that sentence and remand to the trial court for a new sentencing hearing. On remand, the trial court is vested with discretion to impose such term. In this connection, the trial court must "carefully consider the statutes that apply to every felony case [including] R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender [and] statutes that are specific to the case itself."
 {¶ 70} In this instance, the trial court sentenced defendant pursuant to R.C. 2929.14(B), which has been exised from Ohio's statutory scheme. Accordingly, *Page 21 
defendant's sentence is void and he must be re-sentenced. This mater is reversed and remanded for re-sentencing.
 {¶ 71} Defendant's conviction is affirmed, the sentence is vacated and the matter is remanded for re-sentencing.
It is ordered that appellee and appellant split the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for resentencing.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANTHONY O. CALABRESE, JR., P.J., CONCURS.
CHRISTINE T. MCMONAGLE, J., DISSENTS (SEE ATTACHED DISSENTING OPINION)
[1] The Foster Court held that the following statutory sections are unconstitutional: R.C. 2929.14(B), (C), (D)(2)(b), (D)(3)(b), and (E)(4); R.C. 2929.19(B)(2); and R.C. 2929.41(A).